1  Gregory Grant Chapman Sr.
2  945 Danrose Dr Apt-H
   American Canyon CA., 94503
3       Plaintiff (Pro Per)

*FILED*

*JUN 20 2008*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND*

4
                UNITED STATES DISTRICT COURT
5
            FOR NORTHERN DISTRICT OF CALIFORNIA
6

7
   GREGORY GRANT CHAPMAN SR.,           Case No. C07-4775-SBA
8          Plaintiff,
                                        NOTICE OF MOTION TO DEFENDANTS
9                                       REPLY BRIEF AND MOTION BY
                                        PLAINTIFF FOR SUMMARY JUDGEMENT
10                                      MEMORANDUM OF POINTS AND
                                        AUTHORITIES DECLARATION OF
11                                      PLAINTIFF GREGORY G. CHAPMAN Sr.

12  THE CHRONICLE
            Defendants,                 Date: June 24,2008
13                                      Time: 1:00 p.m.
                                        Courtroom:3, 3rd Floor
14                                      Trial Date: None Set

15  TO DEFENDENTS THE CHRONICLE:

16  NOTICE IS HEREBY GIVEN that on June 24,2008 at 1:00 p.m. or as soon thereafter as the

17  Matter can be heard in Courtroom 3,3rd Floor, Ste 400 of the Unites States District Court located

18  At 1301 Clay St. Oakland CA., Plaintiff Gregory Grant Chapman Sr., will and hereby does move

19  for an Order Granting Summary Judgement in favor of Plaintiff.

20  The motion is made on the grounds that there is no trialable issue of fact as to liability, and

21  Therefore the moving party is entitled to judgement on the issue of liability as  a matter of law.

22  The motion will be based on the Notice, the attached Declaration of Plaintiff, and the attached

23  Memorandum of  Points and Authorities.

24

25

26  Date:  6 / 2 0 / 0 8 _____          _____ sr
27                                        Gregory Grant Chapman Sr.
                                          Attorney In Pro Per
28

                                                      Case No. C07-04775 SBA

1   Gregory Grant Chapman Sr.
2   945 Danrose Dr Apt-H
    American Canyon CA., 94503
3        Plaintiff (Pro Per)

4                    UNITED STATES DISTRICT COURT
5
6                  FOR NORTHERN DISTRICT OF CALIFORNIA

7
    GREGORY GRANT CHAPMAN SR.,              Case No. C07-4775-SBA
8        Plaintiff,
                                            NOTICE OF MOTION AND MOTION BY
9                                           PLAINTIFF FOR SUMMARY JUDGEMENT
                                            MEMORANDUM OF POINTS AND
10                                          AUTHORITIES DECLARATION OF
                                            PLAINTIFF GREGORY G. CHAPMAN Sr.
11  THE CHRONICLE
12       Defendents,                        Date: June 24,2008
                                            Time: 1:00 p.m.
13                                          Courtroom:3, 3rd Floor
                                            Trial Date: None Set
14
    TO DEFENDENTS THE CHRONICLE:
15
    NOTICE IS HEREBY GIVEN that on June 24,2008 at 1:00 p.m. or as soon thereafter as the
16
17  Matter can be heard in Courtroom 3,3rd Floor, Ste 400 of the Unites States District Court located

18  At 1301 Clay St. Oakland CA., Plaintiff Gregory Grant Chapman Sr., will and hereby does move

19  for an Order Granting Summary Judgement in favor of Plaintiff.

20  The motion is made on the grounds that there is no trialable issue of fact as to liability, and

21  Therefore the moving party is entitled to judgement on the issue of liability as  a matter of law.

22  The motion will be based on the Notice, the attached Declaration of Plaintiff, and the attached

23  Memorandum of  Points and Authorities.

24

25  Date: ___6 - 20 - 08___              _____
26                                        Gregory Grant Chapman Sr.
                                          Attorney In Pro Per
27

28

1

## PROOF OF SERVICE

2

3          UNITED STATES DISTRICT COURT CASE C07-04775 SBA

4

5                      I declare  that I Gregory Grant Chapman, Sr., of legal age
6                      and a resident of California with the address of 945
                       Danrose Drive #H ,American Canyon, CA 94503 ,  served
7                      the foregoing document(s):

8          PLAINTIFF'S REPLY TO THE DEFENDANT'S SAN
           FRANCISCO CHRONICLE REPLY BRIEF AND SUPPORT
9          FOR SUMMARY JUDGEMENT.

10         By Mail to he parties in said action,as addressed below, in
           accordance with Code of Civil procedure 1013(a), by placing a
11         true copy thereof enclosed in a sealed envelope in a designated
           area for outgoing mail,addressed as set forth below.
12

13

14         I declare under penalty of perjury that the foregoing is true and
           correct. Executed in American Canyon CA on June 20, 2008.

15

16

17         June 20, 2008                Gregory Grant Chapman, Sr

18

19         United States  District Court
           Northern District of California
20         1301 Clay St.  Ste. 400
           Oakland CA  94612-5217
21

22         Littler Mendelson
23         650 California Street,20th Fl.
           San Francisco,CA  94108
24

25

26

27

28

Gregory Grant Chapman,Sr.
945 Danrose Ave. #H
American Canyon CA 94503

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## AT OAKLAND

GREGORY GRANT CHAPMAN SR.          CASE NO.:CV07-04775 SBA
Plaintiff                          PLAINTIFF'S CALCULATION
                                   OF DAMAGES
V.


THE CHRONICLE

    defendants

The following is a breakdown of monetary damages sought by Plaintiff, Gregory

Grant Chapman,Sr.


A. Loss of Wages  from 2003

    $50,000/year – base pay
    $50,000/yr.-benefits/health and welfare and pension.
    =100,000/year
    x  5 years=
    $500,000.00

    Punitive Damages:

B. Wages based on lifetime pension if claims were accepted ( from 1998)

$1960./mo based on  Maximum allowed amount for Total Temp. Disability.
X 12
=$23,520/year
x 15% ( was not offered modified work)
=$35,280/year
x 10 years
=$352,800.00

PLUS
 $140/shift  x 3 shifts  a week ( that is supposed to be  accrued into heath and
welfare even on worker's comp.) =$420./mo

$420/mo.
X12
=5040/year
x10 years
=$50,400.

Lifetime med based on life expectancy of 75 years ( current age is 44;includes
doctor's fees and meds and hospitalization)=$410,000.

Plus $98,000=worker's compensation based on present injury rating.

I WAS OFFERED A GLOBAL SETTLEMENT  THAT WOULD HAVE
MADE ALL MY CLAIMS COMPENSABLE.

Grand Total: $ $813,200.


Punitive Damages:
Harassment, employment discrimination, aggravation of mental distress threat of
physical injury from the job,that caused financial hardship:

$1,148,350/year from 1999.

## I.    INTRODUCTION

It is said that a man that represents himself has a fool for a client. And on many occasions opposing counsel has pointed this out in regards to me The Plaintiff.

And as they may be correct in asserting that I am unlearned and ignorant to judicial language I am no stranger to truth. But God chose the foolish things of the world to shame the wise; God chose the weak things of the world to shame the strong.  He chose the lowly things of this world and the despised things - and the things that are not - to nullify the things that are so that no one can boast before him. (I Corinthians 1:27-29)

## II.    ARGUMENTS

And now to the spirit of my argument whereas before the defendant described the plaintiff as testifying to his beliefs when asked about facts.  After 20 years of employment with The San Francisco Newspaper Agency(The Chronicle) with the last eight in a medical/legal quagmire a wasteland where the company has had the ability to make me whole again but they chose not to. This motion is made on the fact there is no triable issue of fact as to the liability.

## III.    Plaintiff's statement of facts:

1988    I was first employed by Gaul Security as a security guard for San Francisco Newspaper Agency (The Chronicle). Subsequently became a Foot Messenger with the same company. This entailed a series of physical exams that deemed me well-qualified to be on

1    my feet almost all the time, per job description. This is an

2    important fact as the company later claims that my right foot injury

3    was pre-existing.

4

5    1993    The Mountain View Police Department determined that a battery had been

6    committed by supervisor Angela Turner and she was arrested. (see exhibit

7    A)

8    Although, I was the one assaulted I was suspended for several days being

9    charged for her crime by the Chronicle. Later on the shift I received a call

10    by Tony Saranties telling me the conditions of employment is to drop the

11    charges against Angela Turner. I told him the matter is already before the

12    Mountain View district attorney. I was approached by the Mountain View

13    mechanic,

14    Eddie Holmes,who informed me that we (black men) were no longer

15    allowed in the snack vending area. Tom Weldon had made the statement

16    that he didn't want any "large black men around and that they would

17    protect their women".

18    When I advised the Union about this matter I was told by Richard Collins

19    that the Union had forgot to file a grievance. In late 2000 dispatcher

20    Michael Haney was working the loading dock in Union City when he

21    received a phone call from Supervisor Angela Turner asking "why Greg

22    Chapman was delivering papers to Mountain View he is not allowed here.

23    Mr. Haney responded that he had never been informed that Mr. Chapman

24    or any other driver were banned from the Mountain View Office.(exhibit

25

26

27

28

B- letter from Michael Haney)

Ms Turner replied that she will see about that because he is not allowed

here. This shows despaired treatment because Ms.Turner was later

promoted from part-time to full-time supervisor and to remind you I was

disciplined.

 During strike I was suspended for a significant number of days after

The strike for an incident I was not involved in, I was accused of 245pc.

Assault with a deadly weapon with bodily harm, which would have been a

parole violation for me. I was accused of hitting a Huffmaster with a

weapon (either a picket stick or a flashlight). The company had a video

tape that would have immediately exonerated me  but this was not

disclosed until later on after my suspension.  The assault was done

by a non-employee and I was cleared of all charges.  The only incident I

was involved in during the time of the strike was when I tried to help a co-

worker, Marv out of harm's way when a van with replacement workers

tried to run over him. I was corralled by 5 police officers, pepper sprayed

and handcuffed before being released. This incident was never grieved and

my employment opportunity were minimal. This is an example of

 discrimination because as a Union member I am a protected class and the

strike was sanctioned by the IBT International Brotherhood of Teamsters

(exhibit C)

1995    Injured foot on the job. I was ruled by the company doctor as work related

injury. Claims were continually denied for medical treatment. I received

1

2    worker's Compensation until it was abruptly halted.  I applied for SDI was

3    approved and those benefits also were stopped. There was a dispute

4    between the company and SDI, which later ruled that the injury was

5    industrial and the company should have been paying me. While

6    recovering from my injury I was receiving nothing and was made

7    destitute.  Out on disability, claims for treatment (surgery) of the left foot

8    continually denied by the Chronicle.

9

10   1997   Fought for job title (Driver/loader/unloader) and won. This is important

11   because in Worker's Compensation. It is an accommodation ratings and a

12   modification issue as far as rating an injury. Went back to work in June

13   1997, after over 2 years after my injury with restrictions that were not

14   accommodated. One incident involved heavy exposure to toxic fuel and

15   waste after a co-worker wrecked. This incident could have contributed to

16   my nervous condition, along with the stress and was treated for it.

17   While in the course of my duties I came upon a young lady in the shed

18   who was in need of medical attention. After notifying my supervisor and

19   both paramedics and law enforcement and assisting in rendering aid I

20   returned to Union City Plant where the supervisor Harry Lytell refused to

21   sign my overtime and admonished me by saying he was aware of the

22   incident and that I needed to" save people on my own Goddamn time".

23   He later emailed Transportation Manager Leslie Yee with guidelines from

24   the Union Handbook sighting insubordination and asking that I be fired

25   December 1997 violence occurred in the workplace when a man pulled a

26

27

28

knife on me. It was later learned that this man as a recovering drug addict

sponsored by Union dispatcher George Allen. I went out on stress, and

emotional distress because of the above incidents. This matter was

investigated by the insurance adjuster for the Newspaper agency. To the

best of my recollection his name was Mr. Bill Nichols. And although

formal request for this incident I have yet to see a report or hear of

any findings of the investigation. It was later revealed that the

assailant was later identified as someone being sponsored by George

Allen (921Dispatch) for a drug treatment program. Mr. Allen later

apologized on his behalf. With these incidents, I filed for Workers

Compensation based on stress in the workplace in January of 1998.

The insurance adjuster came around and took a statement from me.

This report could have substantiated my psychiatric claim, however,

despite my lawyer, Byron Smith's, numerous requests and subpoena's

for it, the company has never been forthcoming with it. After being

seen by several doctors, including The Chronicle's own doctor, they

have continually denied me treatment, Even after receiving

confirmation from my treating physician Dr. Van Gorder

who qualified my injury as industrial. Their own doctor Dr.Andrew

Whyman who they relied on states that at the time of his professional

opinion that he has never read my Kaiser file .see Calif. YA vs. Workers

Comp. Appeals Board, Rodriguez vs. WCAB, Cristobal v.s. WCAB.

This is crucial because due to my valid psyche claim being denied. I was

1

2   never treated which has created a psychiatric disability and future mental

3   health problems. Which later became a psychiatric disability. I was

4   workplace.

5   1999   Discrimination and harassment in all forms in the workplace

6   intensified. Iris Al-Uqdah, a supervisor, discriminated against me and

7   harassed me in the workplace. She got together with another co-

8   worker, Tony Saab and together they conspired to harass me. Tony

9   Saab harassed me sexually and Iris Al-Uqdah harassed me by creating

10  a hostile work environment. (See witness statements by Homer

11  Martin) The Union and the Company violated the collective

12  bargaining agreement (CBA) when the company disciplined me for a

13  crime I did not commit. The Union violated my Skelly and

14  Weingarter rights by meeting with the company in secret without my

15  knowledge or participation to legally be allowed to address my

16  accusers. The Transportation Department was also guilty by sending

17  me a letter reprimanding me together with the company's Human

18  Resources as they claim they did and investigation yet could not find

19   anything even with all the witnesses I had given them. Most of my

20  witnesses claim they were never contacted by Human Resources

21  during their alleged investigation.

22  2000   August 4,2000 went out on re-injury to the left foot. Up to this date

23  harassment and discrimination continued by denial of treatment even

24  of my accepted injuries. A refusal to allow me to return to work even

25

26

27

28

upon instruction of their own doctors clearing me to return.

2001    Out of process of litigation

2002    Out of process of litigation. There is evidence of fraud and obstruction

of justice  The defendant used a fraudulent web page to defraud the

courts and rob Plaintiff of justice. (see attached documents).

2003    Out of process of litigation Restraining order files based o the

perception of mental illness which qualifies under ADA. Also note to

build their case for the temporary restraining order they excluded the

diagnosis of my treating physician Dr. Rice who stated that I had no

homicidal tendencies or ideations. At this time also the defendant also

used a remaining vacation balance disguised as a wage while on

worker's compensation to suspend my benefits and accruements into

my pension

2004    Out of process of litigation further mental distress caused

2005    Out of process of litigation.  New letter from company HR regarding

not being accommodated (they failed to conduct an ADA required and

agreed upon ergonomic study) and issue of restraining order. Letter

from company counsel offering a pittance in return for my resignation

and forfeiting all my benefits, including my seniority and pension. To

quote Mr. Wesolowski, "It would be a stumbling block to any

settlement". This demand for my resignation or else termination.

On other occasions Mr. Wesolowski made comments that why do I

1    assume this job still has any value.

2    2006    New claims against the above. ( see serious willful misconduct )

3    After three years of being required under American Disabilty Act

4    ADA August 2007 the company finally offers a interactive meeting in

5    regards to my return to work.

6

7    June 12, 2008 the company sends a notice regarding termination of my

8    Permanent disability.

9    I believe the hostile work environment, discrimination and the

10    desperate treatment and failures to rehabilitate me or return to gainful

11    employment. Both in or out of the Workmen's Compensation system

12    constitutes a constructive termination.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Global Settlement

- ENE- The ENE revealed that there was a confession letter towards the sexual harassment. Mr. Torres offered as fact that Tony Saab did confess to the sexual harassment and also course jesting at Mr. Chapman's expense. The union reprimanded him where Mr. Torres was a business agent and in his letter, Mr. Torres stated that if this matter can be handled fraternally that he would apologize to Mr. Chapman. It also revealed that Gary Dunham was actually recused on December 2, 1999. As per the company zero tolerance policy (see recusal powers).

- It also revealed Mr. Haney who also attended the ENE meeting, collaborated the fact that Mr. Dunham had made sexually despairing comments, "You have beautiful bedroom eyes". Counsel for the defendant, MR. Richard Hill, asked Mr. Haney if the comments were offensive, and Mr. Haney stated that Giving that he known Mr. Dunham for a while, he was willing to excuse the remark but felt that a reasonable person such as Mr. Chapman could definitely find it offensive and/are thus grounds for Mr. Chapman's recusal.

- Other issues of importance discuss me and Sandro Garofalo had a discussion about the ideal of settling claims. Ironically we also revisited the statue of limitations in regards to the filing of my case and when I receive my right to sue letter. I recall we had come to a tentative verbal agreement on a monetary amount of $300,000, which was the mortgage of my home in Vallejo and that my workmen's compensation claims would be settled and also allowing me the option to return to gainful employment. One of the conditions of the ENE was

that each side would have someone present how had the power to authorize a settlement. Right after me and Mr. Garofalo's conversation, Mr. Gary Dunham was sought out where upon it was revealed that the chronicle and Mr. Dunham who had attend the full ENE meeting on behalf of the employer had intentionally misrepresented himself as having the power to authorize settlement and that the confidentiality clause was used to conceal fraud.

1  RICHARD N. HILL, Bar No. 083629
   SANDRO GAROFALO, Bar No. 209294
2  LITTLER MENDELSON
   A Professional Corporation
3  650 California Street, 20th Floor
   San Francisco, CA 94108.2693
4  Telephone:    415.433.1940

5

6  Attorneys for Defendant
   SAN FRANCISCO CHRONICLE DIVISION OF HEARST
7  COMMUNICATIONS, INC. AS THE SUCCESSOR IN
   INTEREST TO SAN FRANCISCO NEWSPAPER AGENCY

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 GREGORY CHAPMAN SR.,              Case No. C 01-02305 JL

12          Plaintiff,              **JOINT CASE MANAGEMENT
                                    STATEMENT, RULE 26(f) REPORT,
13    v.                            AND [PROPOSED] ORDER**

14 SAN FRANCISCO NEWSPAPER AGENCY,

15          Defendant.

16

17        The parties to the above-entitled action jointly submit this Case Management

18 Statement and Proposed Order and request the Court to adopt it as its Case Management Order in

19 this case.

20

21                        **DESCRIPTION OF THE CASE**

22

23        This is an action brought by Plaintiff Gregory Chapman (hereinafter referred to as

24 "Plaintiff"), against his employer, San Francisco Chronicle Division of Hearst Communications,

25 Inc., as the successor in interest to the San Francisco Newspaper Agency (hereinafter referred to as

26 "Defendant"). In his Complaint, Plaintiff alleges sexual discrimination and harassment in violation

27 of Title VII of the Civil Rights Act of 1964, as amended. Defendant denies that it harassed, or

28

JOINT CASE MANAGEMENT STATEMENT                          Case No. C 01 2305 CRB
AND PROPOSED ORDER

otherwise discriminated against Plaintiff. Defendant is a responsible employer that maintains

comprehensive equal employment opportunity, nondiscrimination and anti-harassment policies and

detailed reporting procedures to ensure that the work environment complies with all legal

requirements and that mutual respect and responsibility in the workplace are fully and fairly

promoted.

1.    **Brief Description of the Events Underlying the Action**

The Complaint is brought by Plaintiff Gregory Chapman, who is currently employed

by Defendant as a Transportation Driver.  Plaintiff filed his Complaint on June 13, 2001, and

Defendant filed its Answer on August 3, 2001.  The Complaint alleges that Plaintiff was subjected to

sexual harassment by a male co-worker from November 1999 to August 4, 2000 in violation of Title

VII.

Before initiating this lawsuit, on October 26, 2000, Plaintiff filed a charge of

discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff received a right-to-sue letter from the EEOC on March 14, 2001.

Defendant contends that Plaintiff's Complaint is barred by the applicable statute of

limitations because Plaintiff did not file his Complaint within 90 days of receiving his right-to-sue

letter from the EEOC.  Defendant further contends that Plaintiff's action is barred because Plaintiff

did not file a charge with the EEOC within 300 days of the allegedly unlawful conduct by

Defendant.  Moreover, Plaintiff's allegations are not supported factually or legally.  Defendant

contends that Plaintiff willingly engaged in workplace conduct of a sexually inappropriate nature

and that Plaintiff is unable to show that the alleged conduct engaged in by Plaintiff and his male co-

worker was both subjectively and objectively offensive.  Nor was the alleged conduct sufficiently

Loi:    So I was just wondering for that much of an expense I basically got something that is not trackable and I basically got a service that basically just confirms that it went from one postal office to the other.

Sandy: Yes.

Loi:    Okay. So the best way of doing this then is with a purchase, Proof of Delivery, not a Record of Mailing.

Sandy: Right.

Loi:    Okay. Alright, well thank you Sandy.

Sandy: You're certainly welcome mam and thank you for calling. Bye.


*Testing one, two, three. Testing one, two, three

Gregory Chapman:    The receipt was not filled out. It was blank.

Eric·Ross    What was that again?

Gregory Chapman:    You mean the receipt that was just filled out didn't have the postmark on it or nothing?

Eric Ross    Right, cause if you look at one of those receipts in any post office, on the back it has instructions and the last instruction is to take it to a post office and get it postmarked.

Gregory Chapman:    Yea, I'm aware of that.

Eric Ross:    So at that point in time you can ask them what post office you take it to and when you took it there where's the receipt that you got it stamped at the post office. That's all. That's all you need. The other stuff means nothing.

Gregory Chapman:    So you're saying that without that postmark it's basically worthless?

Eric Ross    Yea.

Gregory Chapman:    And if they can't produce that postmark then that website document doesn't mean anything then.

Eric Ross:        The website document is tracking a number of something. Okay, that's all it is, is a tracking number. (End of Tape 1, Side A)

*Begin Tape 1, Side B...

*Testing one, two, three. Testing one, two, three.

Gregory Chapman:   The receipt that was not filled out. It was blank.

Eric Ross:        What was that again?

Gregory Chapman:   You mean the receipt that was just filled out didn't have the postmark on it or nothing.

Eric Ross:        Right, cause if you look at one of those receipts int any post office, on the back it has instructions and the last instruction is to take it to a post office and get it postmarked.

Gregory Chapman:   Yea, I'm aware of that.

Eric Ross:        Okay, so at that point in time you can ask them what post office you take it to and when you took it there where's the receipt that you got it stamped at the post office. That's all. That's all you need. The other stuff means nothing.

Gregory Chapman:   So you're saying without that postmark it's basically worthless?

Eric Ross:        Yea.

Gregory Chapman:   And if they can't produce that postmark then that website document doesn't mean anything then?

Eric Ross:        The website document is tracking a number of something, okay. That's all it is, is a tracking number saying that this was delivered on such and such a date in which we, if there was a letter sent to that address and it had that number on it then yea, you would have to say, well, it was sent. But in addition to that, to have a legal, like if there's a legal document or paperwork they would also want to have a receipt from a post office saying it was put in the system when they said they put it in the system.

Gregory Chapman:   The other question...

Page 11

Gregory Chapman:    One of the other things I wanted to ask was, now that letter that I brought for you to look at to sign there were talking about that that service had to be sent Priority Mail too and I know when we got it wasn't Priority. That was another thing too. I don't know if you ever got to see that letter.

Eric Ross:    Yea, it has to be Priority. You sent it in a Priority envelope, so you can't just send that like regular, put in a letter and put that on there. It has to be Priority Mail.

Gregory Chapman:    Um um.

Eric Ross:    So that's another reason they would have to either bring it here, bring it to a post office, put it that way, get it stamped and get it weighed and know how much it was.

Gregory Chapman:    And then as far as the Delivery Confirmation, it's my understanding it's not a trackable service, so basically it is I guess city to city or zip code to zip code.

Eric Ross:    Right, Delivery Confirmation is just... What happened is that when we deliver it the disposition of that item is scanned as delivered or attempted delivery. That would be it. Like if they wanted someone to sign for it then they would have to send it like Certified Restricted Delivery and someone has to actually really sign for that, the person on the envelope.

Gregory Chapman:    And so then it's probably better, particularly in a legal matter, to have it signed for then, right?

Eric Ross:    Yea, I would say that.

Gregory Chapman:    I guess I'm looking at like, say hypothetically, say it was scanned properly but it was delivered to the wrong address, the scanning wouldn't reveal that information would it?

Eric Ross:    No response.

Gregory Chapman:    I mean, say if the postman, you know, he scanned it and he scanned it okay but say he mis-delivered it, the scanning wouldn't reveal that would it? That's just basically human error that would be revealed by my neighbor telling me he got my mail, right?

Page 13

Loi:   It's KA8025360. Is it possible to talk to Corrie again?

Shay:  I have no way...There's no direct way of connecting with a certain agent. I do apologize.
       And I have a case under Greg Chapman?

Loi:   Yes.

Shay:  One moment please.  Go ahead mam.

Loi:   Yea, I was wondering, I still haven't received this and I'm suppose to be the recipient and
       I still don't have it.

Shay:  One moment please.  One moment.

Loi:   Okay.

Shay:  And you're the recipient on the other end of this. Okay, may I put you on hold while we
       search this a little further?

Loi:   Yes please.

Shay:  One moment please.

(Recording): While you're moving across the street or across the country you can count on the
United States Postal Service for quick delivery to your new address. Just file a permanent or
temporary forwarding order by your local post office and your mail will arrive right at your
doorstep. (Music). www.usps.com. That's where you can find information on rates, zip codes,
locating the nearest post office, Change of Address, putting your mail on Vacation Hold and
much more. Next time you're surfing the web visit us at www.usps.com. Express Mail offers
overnight delivery to most major cities and you can use our computerized tracking and tracing
24 hours a day, seven days a week. For more information on Express Mail services of the United
States Postal Service visit us a www.usps.com.  For delivery you can rely on chose the United
States Postal Service. Did you know that there's an important difference between Certified and
Registered Mail. Certified mail provides (inaudible)...and a record of delivery.

Shay:  Thank you for holding.

Loi:   Yes.

Shay:  I show her that the post office hasn't had a chance to reply for your complaint.

Loi:   I'm sorry, hasn't what? I'm sorry.

Shay:   I'm thinking it's just showing that it was just delivering in time, that's it, not to the addressee, just delivery in time.

Loi:    Is it delivered from city to city or zip to zip?

Shay:   From Destination A to Destination B. It only shows from where you was mailing it to.

Loi:    I'm sorry, it's only what?

Shay:   It's confirmation of where you're mailing it to, confirmation of the time and date it was delivered to the address you were delivering it to.

Loi:    No, that doesn't sound right because if that were the case then why is it not here? You know, nobody signed for it. Nobody should be signing for it.

Shay:   No, no signature is available for Delivery Confirmation.

Loi:    I understand that. So basically for that service I'm only getting...I'm getting what exactly for my service?

Shay:   A confirmation of delivery date and time only. It's not a tracking service.

Loi:    Exactly. So it's not a trackable service. So it just goes from one city to another, correct?

Shay:   Right.

Loi:    Or from one zip code to one zip code?

Shay:   Right.

Loi:    It does not necessarily say that it's delivered to Loi at 1398 Hale.

Shay:   Right.

Loi:    What is proof of delivery then? What can I get as a proof of delivery if I wanted to send something?

Shay:   One moment.  Did you want an evidence of mailing? A Certificate of Mailing does that.

Loi:    Um um.

Shay:   A Certificate of Mailing provides evidence of mailing only. Customer must keep receipt. No record of mailing is kept at the post office.

Page 4

Exhibit A

*File A. Turner (Exempt)*

San Francisco Newspaper Agency

Inter-Office Memorandum

----------------------------------------------------------------

TO:  Rich Randles
cc:  File

FROM:    Tom Weldon

DATE:    October 15, 1993

Subject:  ANGELA TURNER'S ARREST FOR BATTERY

Enclosed is a copy of the police report on the incident between Greg Chapman and Angela Turner. I have also forwarded a copy to Roy Hubert who I have discussed this situation with in the past.

I am very concerned by the fact that Greg Chapman's blatant act of insubordination has gone unpunished by the Transportation Department. The inaction on their part sends a clear message to transportation drivers that they answer to a different set of rules than other employees. It is my belief that when a driver is told to so something by a supervisor on that supervisors turf and this request is backed up by the drivers supervisor on the dock, the driver is to do as he/she is told. Not only to refuse but to use profane and derogatory language in the process of this refusal is insubordination of the worst kind.

Now that John Palm has returned from sick leave perhaps we can pursue this matter again and at the very least suspend Chapman for an appropriate length of time.

10/21  TONY ?

**SAN FRANCISCO NEWSPAPER AGENCY**
Transportation

FROM:    John Palm

TO:    Gregory Chapman

RECEIVED

NOV 0 5 1993

DATE:    October 27, 1993

SUBJ:    Mt.View Office Incident
          September 29, 1993

Based on my findings regarding the incident at the Mtn View
office on Monday, September 29, 1993, specifically your attitude
towards a management employee in the course of your duties, you
are being warned that any futher incidents of insubordination
will not be tolerated. Disciplinary action can, and will be
taken.

Union and company procedures require that you perform any duty
asked of you, and if you have a problem, you are to persue your
grievance rights through the proper channels.


cc:  A. Sarantitis
     Local 921
     file

# CITY OF MOUNTAIN VIEW POLICE DEPARTMENT

CA0431100

☐ F
☒ M
☐ I
☐ S

☐ Domestic Violence
☐ Victim Violent Crime
☒ Assault
☐ Gang Related

☐ Bias Crime
☐ Special Event Related
☐ AOPO

☐ Over 60

Weapon  HANDS - CHEST

Case Number  93 - 12101

Beat Number  B-3

**CRIME**

| | | | | |
|---|---|---|---|---|
| Crime/Incident  BATTERY | | Primary Code  P.C. 242 | Property Loss $ | Prop. Recovered $ | Prop. Damaged $ |

Location  2425 LEGHORN AVENUE    MTN. VIEW

Occurred On Or Between   Date 9-20-93   Day MON.   Time 0540

Business Name  SAN FRANCISCO NEWS   Date Rptd 9-20-93   Time Rptd 0543   Date   Day   Time

**VICTIM**

| NAME: Last, First, Middle  CHAPMAN, GREGORY GRANT | Race B | Sex M | DOB 8-5-63 | Age 30 | Occupation TRUCK DRIVER |
|---|---|---|---|---|---|
| Residence Address  317 WARWICK AVE. #302 | City OAKLAND | State CA. | Zip Code 94610 | Res. Phone (510) 893-7543 | |
| Business Address  100 FIFTH STREET | City SAN FRANCISCO | State CA. | Zip Code 94103 | Bus. Phone (415) 777-7777 | |

Codes:    V–Victim    W–Witness    P–Parent    RP–Reporting Party    S–Subject    D–Deceased    DC–Discovered Crime    O–Owner

**INVOLVED PARTIES**

| Code W | NAME: Last, First, Middle  SANDIFER, JEFFERY RAY | Race W | Sex M | DOB 1-25-58 | Age 35 | Occupation MANAGER |
|---|---|---|---|---|---|---|
| | Residence Address  770 OPAL DRIVE #2 | City SAN JOSE | State CA | Zip Code 95112 | Res. Phone (408) 261-3725 | |
| | Business Address  2435 LEGHORN AVENUE | City MTN. VIEW | State CA | Zip Code 94040 | Bus. Phone (415) 969-3563 | |
| Code | NAME: Last, First, Middle | Race | Sex | DOB | Age | Occupation |
| | Residence Address | City | State | Zip Code | Res. Phone | |
| | Business Address | City | State | Zip Code | Bus. Phone | |
| Code | NAME: Last, First, Middle | Race | Sex | DOB | Age | Occupation |
| | Residence Address | City | State | Zip Code | Res. Phone | |
| | Business Address | City | State | Zip Code | Bus. Phone | |

**SUSPECT/ARRESTEE**

#1 Name: Last, First, Middle  ▓▓▓▓▓▓▓▓▓

| Race W | Sex F | Age 37 | DOB 10-23-55 | HT 5-08 | WT 145 | Hair BLK | Eyes BRN | DL# ▓▓▓ | State CA. |
|---|---|---|---|---|---|---|---|---|---|

Residence Address  13491 WARD AVENUE   City SARATOGA   Phone ▓▓▓▓▓   Business Address/City/Phone  2425 LEGHORN AVE. MTN. VIEW

Add'l Arrestee Information (Clothing, Tattoos/teeth/birthmarks/scars, etc.)  N/A

Booking Charges  N/A   Booking Location   ☐ Arrested  ☐ 849B  ☐ Prints   ☐ Booked  ☐ Photo  ☐ Cited

#2 Name: Last, First, Middle   AKA

MOUNTAIN VIEW POLICE DEPT
CONTROLLED DOCUMENT
DO NOT DUPLICATE

| Race | Sex | Age | DOB | HT | Phone | | | | State |
|---|---|---|---|---|---|---|---|---|---|

Residence Address   City   Phone

Add'l Arrestee Information (Clothing, Tattoos/teeth/birthmarks/scars, etc.)

Booking Charges   Booking Location   ☐ Arrested  ☐ 849B  ☐ Prints   ☐ Booked  ☐ Photo  ☐ Cited

**VEHICLE**

| ☐ Victim ☐ Susp. | Year | Make | Model | Body Style | Color/Color | License# | | State |
|---|---|---|---|---|---|---|---|---|
| Add'l Vehicle Identifiers (damage/chrome wheels/etc.) | | | | | R/O | | | |
| ☐ Victim ☐ Susp. | Year | Make | Model | Body Style | Color/Color | License# | | State |
| Add'l Vehicle Identifiers (damage/chrome wheels/etc.) | | | | | R/O | | | |

| Reporting Officer  M SOQUI | CJIC# 52384 | Indexed By | Copies Made | Cross References |
|---|---|---|---|---|

PD 1 (Rev 7-92)

Mountain View Police Department    CA0431100                          Case 93 - 12101

SOQUI – Continuation – 09-20-93 – Page 2 of 3                         BATTERY

**ARRESTED:** TURNER, Angela D.; WFA; 10-23-55

**ATTACHMENTS:**

Item No. 1 - Citizen's Arrest Form signed by CHAPMAN.
Item No. 2 - Miranda Card signed by TURNER.
Item No. 3 - Mountain View Citation No. G325505.

**INVESTIGATION:**

On 09-20-93 at approximately 0543 hours, I responded to the report of a battery at 2425 Leghorn Avenue in Mountain View.

Upon my arrival, I contacted CHAPMAN. CHAPMAN said he was a truck driver for the San Francisco Newspaper Agency. CHAPMAN said today, at approximately 0530 hours, he delivered a load of newspapers to the Mountain View office. He said after he had unloaded most of the newspapers he was contacted by TURNER who is the supervisor of the Mountain View branch office. CHAPMAN said TURNER advised him that he was two bundles short. He said he disagreed, and they began to argue. CHAPMAN said while they were arguing, TURNER reached out and grabbed his right arm, shook it, and said, "You need to listen to me." He said he stepped back and pulled his arm away from TURNER. CHAPMAN said TURNER then turned around and walked into her office. He said while TURNER was in her office, he used the telephone and called his workplace. CHAPMAN said approximately five minutes later TURNER came out of the office and again confronted him about the shipment. He said he got upset and called TURNER a "dyke." CHAPMAN said TURNER then got upset and said, "Well, fuck you." He said TURNER then turned around and walked away, and he went back to his truck. CHAPMAN said he did not touch or hit TURNER at any time. He said when TURNER grabbed him she used her right hand and grabbed his left arm. CHAPMAN had no visible injuries and said he was not injured. He said he wished criminal prosecution against TURNER for battery and signed the citizen's arrest form.

Then contacted SANDIFER, the officer manager of the Mountain View office, who said he was standing approximately 5' to 7' away from CHAPMAN and TURNER during the argument. SANDIFER said CHAPMAN and TURNER were arguing about a shipment of newspapers. He said during the argument TURNER reached out, grabbed CHAPMAN by his left arm, and said, "I always touch people." SANDIFER said CHAPMAN stepped back, and they continued to argue. He said TURNER and CHAPMAN then walked into the business out of his view. SANDIFER said prior to TURNER grabbing CHAPMAN, she was standing approximately 3' away from him. He said TURNER used her right hand and grabbed CHAPMAN by his left arm.

Then walked with CHAPMAN into the business and he pointed out TURNER to me. I contacted TURNER and advised her of her Miranda rights, which she said she understood and agreed to waive. I asked her if she was involved in a verbal altercation with CHAPMAN, and she said yes. I then advised TURNER that CHAPMAN had placed her under citizen's arrest for battery. She said today at approximately 0530 hours CHAPMAN delivered newspapers from the

/SOQ/840930a/3

D00040

Mountain View Police Department      CA0431100                    Case 93 - 12101

SOQUI – Continuation – 09-20-93 – Page 3 of 3                         BATTERY

San Francisco office. TURNER said she checked the work order and noticed that CHAPMAN was two bundles short. She said she walked out to CHAPMAN's truck and told him about the shortage. TURNER said CHAPMAN disagreed with her, and they began to argue. She said while they were arguing she placed her hand on CHAPMAN's arm and said, "Listen to me." TURNER said CHAPMAN then stepped back and got upset. She said they continued to argue for approximately one minute and then she turned around and went into her office. TURNER said approximately five minutes later she came out of her office and contacted CHAPMAN who was on the telephone. TURNER said CHAPMAN hung up the phone, and they continued to argue. She said while they were arguing, CHAPMAN said, "You dyke." TURNER said she got upset and said, "Well, fuck you." She said CHAPMAN then stepped toward her and bumped her with his chest. TURNER said she pushed CHAPMAN back with both hands, turned around, and walked back into her office. She said when she touched CHAPMAN, she touched his arm as a form of communication and not in a threatening manner. TURNER said, "I'm Italian, I use my hands to express myself." She said she did not grab CHAPMAN's arm and shake it at any time. TURNER said when she was confronted by CHAPMAN, he was approximately 3' away from her. She said CHAPMAN stepped up abruptly and bumped her with his chest in her chest area, causing her to step back. TURNER had no visible injuries and said she was not injured.

I advised TURNER that she had the right to place CHAPMAN under citizen's arrest for battery, but she declined to do so. I then issued TURNER Mountain View Citation No. G325505 for violation 242 PC, battery, and released her.

A criminal history check of TURNER revealed no prior criminal history.

CASE CLOSED.

COPY TO D.A.

OFFICER SOQUI, S2784

D00039

COUNTY OF SANTA CLARA STATE OF CALIFORNIA          NOTICE TO APPEAR
CITY OF MOUNTAIN VIEW

☒ MISDEMEANOR    ☐ TRAFFIC ☐ NON-TRAFFIC    NO. G-325505

| DATE MONTH-DAY-YEAR | TIME ☒ AM | DAY OF WEEK | CASE NUMBER | BEAT |
| 9-20-93   08:00 PM | MON | 93-12101 | 3 |

NAME (FIRST, MIDDLE, LAST)
ANGELA D. TURNER

RESIDENCE ADDRESS                     APT. SPACE          CITY              ZIP
13491 WARD WAY    SARATOGA  95070

BUSINESS ADDRESS/SCHOOL                              CITY
2425 LEGHORN AVE  MTN. VIEW 94040

| DRIVER'S LICENSE NO. | STATE | CLASS | HR | MONTH-DAY-YEAR |
| C2643711  CA | C X 3 | 10-23-55 |

| SEX | HAIR | EYES | HGHT | WGHT | RACE | DESCRIPTION PHONE |
| F | BLK | BRN | 5'4 | 145 | W | (408) 993-0867 |

VEHICLE                                          STATE
LICENSE NO.  N/A   CA

YR. OF VEH   MAKE/MODEL              COLOR/STYLE

REGISTERED OWNER                                 ☐ SAME AS DRIVER
OR LESSEE

ADDRESS OF OWNER                                 ☐ SAME AS DRIVER
OR LESSEE

EVIDENCE OF FINANCIAL RESPONSIBILITY

| ELIGIBLE FOR CORRECTION W/O ADMIN | VIOLATION(S): | CODE | SECTION(S) | DESCRIPTION | ☒ BOOKING REQUIRED |
| ☐ YES ☐ NO | ✗✗ P.C. 242 BATTERY | |
| ☐ YES ☐ NO | | M-2 |
| ☐ YES ☐ NO | | M-3 |
| ☐ YES ☐ NO | | M-4 |

| APPROX. SPEED | PF MAX SPEED (POSTED) | SAFE SPEED | DIRECTION OF TRAVEL  N S E W | LANE NO. | # ROAD |

LOCATION OF VIOLATION IS ON OR AT
2425 LEGHORN AVE. MTN. VIEW

COMMENTS: WEATHER, ROAD, AND TRAFFIC CONDITIONS    ☐ DAYLIGHT   ☐ DARK-STREET LIGHTS
N/A                                               ☐ DAWN/DUSK  ☐ DARK-NO STREETLIGHTS

I (WE) DECLARE (IS NOT COMMITTED IN MY PRESENCE) DECLARE ON INFORMATION AND BELIEF, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

| ISSUING OFFICER  M. SORNI | ISSUE DATE  9-20-93 | I.D. # 584 | NO. G-325505 |
| ARRESTING OFFICER (IF OTHER THAN ABOVE) | ISSUE DATE | I.D. # | NO. DATES TO |

WITHOUT ADMITTING GUILT, I (WE) PROMISE TO APPEAR AT 270 GRANT AVE., Palo Alto, California, before a Judge of the Court or the Municipal Court.

X SIGNATURE  X Angela D. Turner

YOUR COURT CONTACT DATE (IF THE COURTESY NOTICE     ALL COURT INFORMATION, BOOKING INFOR-
IS NOT RECEIVED) IS      MONTH    DAY    YEAR        MATION AND COURTESY NOTICE PRO-
                                                    CEDURES EXPLAINED ON REVERSE SIDE

☐ JUVENILE COURT TRAFFIC DIVISION. YOU ARE   | ASSIGNED COURT DATE AND TIME (NON-TRAFFIC)
TO CONTACT JUVENILE COURT IF COURTESY        | DATE 11-9-93  0900 X ☒ AM ☐ PM
NOTICE IS NOT RECEIVED WITHIN 45 DAYS.

JUVENILE COURT USE ONLY
☐ X  8074       SEE REVERSE SIDE FOR INSTRUCTIONS     4231694

FORM APPROVED BY JUDICIAL COUNCIL OF CALIFORNIA VC #40513.6, #4300 & #4302

**COURT COPY**

D00044

Case # _____

| WEAPON | CLOTH... | HAIR STYLE | HAIR LE   H | APPEARANCE | DEMEANOR |
|---|---|---|---|---|---|

**WEAPON** — ype _____ odel _____ aiber _____ tter _____

**CLOTH...** — Hat _____ Mask _____ Glasses _____ Body Clothing (Colors-Descriptions) _____ Pants/Type _____ Gloves/Type _____ Shoes/Type _____

☐ R/L HANDED

☐ Right  ☐ Left

**HAIR STYLE**
☐ Afro ☐ Braided ☐ Cornrow ☐ Crew Cut ☐ Flat Top ☐ Greasy ☐ Jeri Curls ☐ Long ☐ Military ☐ Pony Tail ☐ Receding ☐ Short ☐ Straight ☐ Wig ☐ Wavy/Curly ☐ Other

**HAIR LENGTH**
☐ Bald ☐ Collar ☐ Long ☐ Medium ☐ Receding ☐ Shaved ☐ Short ☐ Thick ☐ Trimming ☐ Other

**APPEARANCE**
☐ Casual ☐ Clean ☐ Dirty ☐ Disguise ☐ Flashy ☐ Good Looking ☐ Military ☐ Unkempt ☐ Unusual ☐ Well Groomed

**DEMEANOR**
☐ Angry ☐ Apologetic ☐ Calm ☐ Irrational ☐ Nervous ☐ Profane ☐ Polite ☐ Professional ☐ Violent

**FACIAL HAIR**
☐ Unk type Beard ☐ Clean Shaven ☐ Full Beard ☐ Fu man chu ☐ Goatee ☐ Lower Lip Hair ☐ Mustache ☐ Short Beard ☐ Side Burns ☐ Unshaven

**SPEECH**
☐ Accent ☐ Disguised ☐ High Pitch ☐ Low Pitch ☐ Loud ☐ Lisp ☐ Rapid ☐ Slow ☐ Soft ☐ Stutter ☐ Talkative

**COMPLEXION**
☐ Acne ☐ Dark ☐ Freckles ☐ Light ☐ Medium ☐ Pock Marked ☐ Reddish ☐ Tanned

**TATTOO/SCARS/MARKS/MISSING LIMB**

☐ Tattoo ☐ Scar ☐ Marks ☐ Missing Limb

...cation _____ Description _____
...cation _____ Description _____
...cation _____ Description _____
...cation _____ Description _____

| WEAPON | CLOTHING | HAIR STYLE | HAIR LENGTH | APPEARANCE | DEMEANOR |
|---|---|---|---|---|---|

**WEAPON** — ...pe _____ ...del _____ ...ber _____ ...er _____

**CLOTHING** — Hat _____ Mask _____ Glasses _____ Body Clothing (Colors-Descriptions) _____ Pants/Type _____ Gloves/Type _____ Shoes/Type _____

☐ R/L HANDED

Unknown ☐ Right  ☐ th ☐ Left

**HAIR STYLE**
☐ Afro ☐ Braided ☐ Cornrow ☐ Crew Cut ☐ Flat Top ☐ Greasy ☐ Jeri Curls ☐ Long ☐ Military ☐ Pony Tail ☐ Receding ☐ Short ☐ Straight ☐ Wig ☐ Wavy/Curly ☐ Other

**HAIR LENGTH**
☐ Bald ☐ Collar ☐ Long ☐ Medium ☐ Receding ☐ Shaved ☐ Short ☐ Thick ☐ Trimming ☐ Other

**APPEARANCE**
☐ Casual ☐ Clean ☐ Dirty ☐ Disguise ☐ Flashy ☐ Good Looking ☐ Military ☐ Unkempt ☐ Unusual ☐ Well Groomed

**DEMEANOR**
☐ Angry ☐ Apologetic ☐ Calm ☐ Irrational ☐ Nervous ☐ Profane ☐ Polite ☐ Professional ☐ Violent

**FACIAL HAIR**
☐ Unk type Beard ☐ Clean Shaven ☐ Full Beard ☐ Fu man chu ☐ Goatee ☐ Lower Lip Hair ☐ Mustache ☐ Short Beard ☐ Side Burns ☐ Unshaven

**SPEECH**
☐ Accent ☐ Disguised ☐ High Pitch ☐ Low Pitch ☐ Loud ☐ Lisp ☐ Rapid ☐ Slow ☐ Soft ☐ Stutter ☐ Talkative

**COMPLEXION**
☐ Acne ☐ Dark ☐ Freckled ☐ Light ☐ Medium ☐ Pock Marked ☐ Reddish ☐ Tanned

**TATTOO/SCARS/MARKS/MISSING LIMB**

☐ Tattoo ☐ Scar ☐ Marks ☐ Missing Limb

...ation _____ Description _____
...ation _____ Description _____
...s _____ Description _____
_____ Description _____

| A# | CODE | QUANTITY | ARTICLE | BRAND | SER# | MODEL | DESCRIPTION/LOCATION | VALUE |
|---|---|---|---|---|---|---|---|---|
| /A | | | | | | | | |

T APROX. 0540 HOURS, CHAPMAN AND TURNER WERE INVOLVED IN AN
?RGUMENT IN WHICH TURNER GRABBED CHAPMANS ARM. CHAPMAN
SUBSEQUENTLY PLACED TURNER UNDER CITIZENS ARREST.

?EE NARRATIVE -

**ATIONS**
...er Latents _____
...otographed
...ression Taken

☐ Scene Photographed
☐ Vehicle/shoe Tracks
☐ Neighborhood Checked

☐ Tool Marks
☐ Diagram of Scene

**...CATION**

_____ MIN    Report Writing Time  30 MIN    Time Report Completed  0800

Scar(s): _____    CJIC#: _____    Supervisor:  SGT. WEIR

MOUNTAIN VIEW POLICE DEPARTMENT

## MISSING PERSON INVESTIGATION

**DECLARATION OF ARREST BY PRIVATE PERSON:**

UNDER THE AUTHORITY OF SECTION 837 P.C., I HAVE PLACED THE BELOW NAMED PERSON(S) UNDER ARREST FOR VIOLATION OF THE SECTION(S) INDICATED AND HAVE RELEASED SAID PERSON(S) INTO THE CUSTODY OF A POLICE OFFICER OF THE CITY OF MOUNTAIN VIEW, CALIFORNIA

REPORT NO. 73-12101

ARRESTED: Turner, Angela

SECTION(S) VIOLATED: P.C. 242

DATE AND TIME OF ARREST: 9-20-73   0615

SIGNATURE OF PERSON MAKING ARREST: X _____

REFER TO D.A.

**CITY OF MOUNTAIN VIEW POLICE DEPARTMENT**
**REPORT RECEIPT**

Case Number  93 - 12101

Type of Incident  BATTERY

Date  9-20-93

Officer  M. soacN          Badge  41

PD-154 (Rev 2-91)                    *Instructions on Reverse*

# INSTRUCTIONS

1. Retain this Report Receipt as you may need this information for further contact with the Police Department, your insurance company, or for tax purposes.

2. If you require a copy of a *traffic collision* report, it may be obtained by mail or in person from the Police Records Section. Copies of *completed* collision reports are generally available 7 to 10 working days after the collision date; some information regarding involved parties may be obtained prior to the completion of the full report. Copies of other types of police reports may be released to involved parties. Requests for copies of police reports must be submitted in writing; review for eligibility for the copy will generally be made within 3 working days. *There is a fee for a copy of any police report.*

3. Additional questions or information relating to your case should be directed to:
   - ☒ Investigation Officer    415-903-6344
   - ☐ Records Section    415-903-6344
   - ☐ Detectives/Investigation    415-903-6348
   - ☐ Juvenile Division    415-903-6349

To Honorable Judge Saundra B. Armstrong:

I Michael S Haney stand by my previous statements made in late 2000 about the Mountain View incident that occurred between Greg Chapman, the supervisor and myself. I also stand by statements made in connection with the Human Resources investigation of Mr. Chapman's sexual harassment charges.

Furthermore I believe that Mr. Chapman asked for Mr. Dunham recusal because of remarks made to me from Mr. Dunham that could have been misconstrued as sexual harassing in nature.


Michael Haney

4/20/2008

June 20, 2008

KIMBERLY A. REED
Commission # 1566278
Notary Public - California
Solano County
My Comm. Expires Apr 2, 2009

About 4 or 5 months ago, I was working the loading dock at Union City when I received a phone call from the supervisor of the Mountain View (Angela) office asking why was Greg Chapman bringing papers to this Office, he is not allowed here. I responded that I have never been informed that Greg or any other driver could not deliver papers to that office. She replied that she will see about that because he his not allowed here.

Another incident happened about a year ago when I was at the Richmond Plant. Tony Saab entered the office and said I hope I don't see that Chapman because I will drop him like a bad habit.

Mike Haney



KIMBERLY A. REED
Commission # 1566276
Notary Public - California
Solano County
My Comm. Expires Apr 2, 2009



NAME    GREGORY  GRANT  CHAPMAN
STREET  #38 Sarcedo Way
CITY, STATE, ZIP CODE   American Canyon CA 94503

TELEPHONE #:  707-643-4093

## STATE OF CALIFORNIA
## WORKERS' COMPENSATION APPEALS BOARD

|  |  |
|---|---|
| GREGORY  GRANT  CHAPMAN Applicant, <br><br> vs. <br><br> SF CHRONICLE (SFNA) <br> Claims Mgt. Inc. <br><br> Defendants. | WCAB#: <br><br><br> **APPLICATION FOR BENEFITS FOR** <br> **SERIOUS AND WILLFUL MISCONDUCT** <br> **OF EMPLOYER** |

Please see attached letters.


GREGORY  GRANT  CHAPMAN

7/13/06

State of California
Department of Industrial Relations
DIVISION OF WORKERS' COMPENSATION

*Estado de California*
*Departamento de Relaciones Industriales*
*DIVISION DE COMPENSACIÓN AL TRABAJADOR*

## EMPLOYEE'S CLAIM FOR WORKERS' COMPENSATION BENEFITS

If you are injured or become ill because of your job, you may be entitled to workers' compensation benefits.

Complete the "Employee" section and give the form to your employer. Keep the copy marked "Employee's Temporary Receipt" until you receive the dated copy from your employer. You may call the Division of Workers' Compensation at 1-800-736-7401 if you need help in filling out this form or in obtaining your benefits. An explanation of workers' compensation benefits is included on the back of this form.

You should also have received a pamphlet from your employer describing workers' compensation benefits and the procedures to obtain them.

## *PETICION DEL EMPLEADO PARA BENEFICIOS DE COMPENSACIÓN DEL TRABAJADOR*

*Si Ud. se ha lesionado o se ha enfermado a causa de su trabajo, Ud. tiene derecho a recibir beneficios de compensación al trabajador.*
*Complete la sección "Empleado" y entregue la forma a su empleador. Quédese con la copia designada "Recibo Temporal del Empleado" hasta que Ud. reciba la copia fechada de su empleador. Si Ud. necesita ayuda para completar esta forma o para obtener sus beneficios, Ud. puede hablar con la Division de Compensación al Trabajador llamando al 1-800-736-7401. En la parte de atrás de esta forma se encuentra una explicación de los beneficios de compensación al trabajador.*

*Ud. también debería haber recibido de su empleador un folleto describiendo los beneficios de compensación al trabajador lesionado y los procedimientos para obtenerlos.*

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

*Toda aquella persona a propósito haga o cause que se produzca cualquier declaracion o representación material falsa o fraudulenta con el fin de obtener o negar beneficios o pagos de compensación a trabajadores lesionados es culpable de un crimen mayor "felonía".*

---

**Employee:** *Empleado:*

1. Name. *Nombre.* Gregory Grant Chapman    Today's Date. *Fecha de Hoy.* July 13, 2006
2. Home Address. *Dirección Residencial.* 38 Sarcedo Way, AMerican Canyon
3. City. *Ciudad.* American Canyon    State. *Estado.* CA    Zip. *Código Postal.* 94503
4. Date of Injury. *Fecha de la lesión(accidente).* 2000 - present Time of Injury. *Hora en que ocurrió.* _____a.m._____p.m.
5. Address and description of where injury happened. *Dirección/lugar dónde occurió el accidente.* SFNA
6. Describe injury and part of body affected. *Describa la lesión y parte del cuerpo afectada.* Stress and Trauma arising from 2000 harassment and discrimination case, hostile work environment that continues to present due to the process of litigation.
7. Social Security Number. *Número de Seguro Social del Empleado.* 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
8. Signature of employee. *Firma del empleado.* Gregory G. Chapman

---

**Employer—complete this section and give the employee a copy immediately as a receipt.**
*Empleador—complete esta sección y déle inmediatamente una copia al empleado como recibo.*

9. Name of employer. *Nombre del empleador.*
10. Address. *Dirección.*
11. Date employer first knew of injury. *Fecha en que el empleador supo por primera vez de la lesión o accidente.*
12. Date claim form was provided to employee. *Fecha en que se le entregó al empleado la petición.*
13. Date employer received claim form. *Fecha en que el empleado devolvió la petición al empleador.*
14. Name and address of insurance carrier or adjusting agency. *Nombre y dirección de la compañía de seguros o agencia administradora de seguros.*
15. Insurance Policy Number. *El número de la póliza del Seguro.*
16. Signature of employer representative. *Firma del representante del empleador.*
17. Title. *Título.*    18. Telephone. *Teléfono.*

---

**Employer:** You are required to date this form and provide copies to your insurer or claims administrator and to the employee, dependent or representative who filed the claim within <u>one working day</u> of receipt of the form from the employee.

SIGNING THIS FORM IS NOT AN ADMISSION OF LIABILITY

*Empleador: Se requiere que Ud. feche esta forma y que provéa copias a su compañía de seguros, administrador de reclamos, o dependiente/representante de reclamos y al empleado que hayan presentado esta petición dentro del plazo de <u>un día hábil</u> desde el momento de haber sido recibida la forma del empleado.*

*EL FIRMAR ESTA FORMA NO SIGNIFICA ADMISION DE RESPONSABILIDAD*

Original (Employer's Copy)
DWC Form 1 (REV. 1/94)

*ORIGINAL (Copia del Empleador)*
*DWC Forma 1 (REV. 1/94)*

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS

# WORKERS' COMPENSATION APPEALS BOARD

SEE REVERSE SIDE
FOR INSTRUCTIONS

**APPLICATION FOR ADJUDICATION OF CLAIM**
(PRINT OR TYPE NAMES AND ADDRESSES)

CASE No. _____

M GREGORY GRANT CHAPMAN
_____

#38 Sarcedo Way , American Canyon
(INJURED EMPLOYEE'S ADDRESS AND ZIP CODE)

Social Security No.: 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
_____

CA 945-03
(ADDRESS)

GREGORY GRANT CHAPMAN
(APPLICANT, IF OTHER THAN INJURED EMPLOYEE)
VS.

Same as above
(APPLICANT'S ADDRESS AND ZIP CODE)

SF Newspaper Agency
(EMPLOYER — STATE IF SELF-INSURED)

925 Mission St,SF CA 94105
(EMPLOYER'S ADDRESS AND ZIP CODE)

Claims Mgt. Inc.
(EMPLOYER'S INSURANCE CARRIER OR, IF SELF-INSURED, ADJUSTING AGENCY)

P.O. Box 3042, Sacramento CA 95812
(INSURANCE CARRIER OR ADJUSTING AGENCY'S ADDRESS)

**IT IS CLAIMED THAT:**

1. The injured employee, born 8/5/63 , while employed as a Driver/Loader/Unloader
   (DATE OF BIRTH)                                                    (OCCUPATION AT TIME OF INJURY)
   on August 4,2000 at San Rafael CA
   (DATE OF INJURY)              (CITY)              (STATE)              (ZIP CODE)
   By the employer sustained injury arising out of and in the course of employment to psyche(cumulative due to
   Injury to left ankle/foot ,back and neck,right foot,right knee
   (STATE WHAT PARTS OF BODY WERE INJURED)

2. The injury occurred as follows: Unloading/Spotting papers   Harrasment and discrim
   (EXPLAIN WHAT EMPLOYEE WAS DOING AT TIME OF INJURY AND HOW INJURY WAS RECEIVED)

3. Actual earnings at time of injury were: MAX   Due to the process of litigation
   (GIVE WEEKLY OR MONTHLY SALARY OR HOURLY RATE AND NUMBER OF HOURS WORKED PER WEEK)
   (SEPARATELY STATE VALUE PER WEEK OR MONTH OF TIPS, MEALS, LODGING OR OTHER ADVANTAGES REGULARLY RECEIVED)

4. The injury caused disability as follows: Aug.2000- present
   (SPECIFY LAST DAY OFF WORK DUE TO THIS INJURY AND BEGINNING AND ENDING DATES OF ALL PERIODS OFF DUE TO THIS INJURY)

5. Compensation was paid X   $ _____   $ 440 +/-   Early 2003
   (YES)   (NO)   (TOTAL PAID)   (WEEKLY RATE)   (DATE OF LAST PAYMENT)

6. Unemployment insurance or unemployment compensation disability benefits have been received since the date of injury
   _____
   (YES)   (NO)

7. Medical treatment was received X   February 15,2006   All treatment was furnished by
   (YES)   (NO)   (DATE OF LAST TREATMENT)
   the Employer or Insurance Company X   Other treatment was provided or paid for by Unknown
   (YES)   (NO)
   _____   Did Medi-Cal pay for any health care
   (NAME OF PERSON OR AGENCY PROVIDING OR PAYING FOR MEDICAL CARE)
   related to this claim X   doctors not provided or paid for by employer or insurance company who treated or examined
   (YES)   (NO)
   for this injury are Unknown
   (STATE NAMES AND ADDRESSES OF SUCH DOCTORS AND NAMES OF HOSPITALS TO WHICH SUCH DOCTORS ADMITTED INJURED)

8. Other cases have been filed for industrial injuries by this employee as follows:
   SFO 418099 SFO 395593 San Francisco CA
   (SPECIFY CASE NUMBER AND CITY WHERE FILED)

9. This application is filed because of a disagreement regarding liability for: Temporary disability indemnity XX
   Permanent disability indemnity XX   Reimbursement for medical expense XX   Medical treatment XXX
   Compensation at proper rate XX   Rehabilitation XX   Other (Specify) XXXX
   (AND APPLICANT REQUESTS A HEARING AND AWARD OF)
   ALL THE ABOVE POSSIBLY APPLY
   THE SAME, AND FOR ALL OTHER APPROPRIATE BENEFITS PROVIDED BY LAW.

Dated at July 13,2006 , California, American Canyon
   (CITY)                                  (DATE)

NOT APPLICABLE
(APPLICANT'S ATTORNEY)

_____ JR
(APPLICANT'S SIGNATURE)

_____
(ADDRESS AND TELEPHONE NUMBER OF ATTORNEY)

84 32595

DIA WCAB FORM 1 (REV. 7/81)

NAME     GREGORY GRANT CHAPMAN
STREET   #38 Sarcedo Way
CITY, STATE, ZIP CODE   American Canyon CA 94503

TELEPHONE #:  707-643-4093

## STATE OF CALIFORNIA
## WORKERS' COMPENSATION APPEALS BOARD

|  |  |
|---|---|
| GREGORY GRANT CHAPMAN Applicant, <br> vs. <br> SF CHRONICLE (SFNA) <br> Claims Mgt. Inc. <br> Defendants. | WCAB#: <br><br> APPLICATION FOR BENEFITS FOR <br> SERIOUS AND WILLFUL MISCONDUCT <br> OF EMPLOYER |

Please see attached letters.

_Gregory B Chapman_                                    7/13/06
GREGORY GRANT CHAPMAN

On May 11, 2006, a mandatory settlement conference was held at the Workers Compensation Appeals Board in San Francisco, CA between the defendants and myself.

This was after waiting nearly two and a half years from what was stated as an ADA sanctioned inquiry to weigh the benefits of an ergonomic study that was supposed to have been conducted but never was, to set-up any necessary accommodations for my return to work as a QIW(qualified Injured Worker), with a disability rating of 25% or greater (Please see exhibit A). *Dr. Grutz*

The Defendant's counsel, Mr. James Wesolowski stated that he had no recollection of any ergonomic study being mentioned or to be conducted in regards to my returning to work at the January , 2004 meeting, which is untrue (please see exhibit B). *Battle*

At the same May 11, 2006 meeting, it was again reiterated that the company strictly enforces a policy of not accommodating modified employment duties for employees with disabilities,whether or not they have suffered their handicap due to an industrial or work-related injury. In my case, additional reasons given for my not being allowed to go back to work, namely:

1) An expired restraining order that never precluded me from employment but only imposed a certain distance that had to be maintained.
2) A work stoppage that was enforced by their misstating,misrepresenting and disguising the function of a TFN that was imposed by them (TFN or Til Further Notice is a work-related term wherein a worker is put on schedule to fill a shift either indefinitely or until the regular bid-shift employee returns from lay-off, vacation or disability) .

**Why would a disabled employee who has been off for 5 years be requesting permission to further lay-off and disrupt his life an additional year on TFN when the whole purpose of the January , 2004 meeting was to craft a return to work strategy?**

It was also at this time that my resignation or effective termination was demanded in return for the equivalent of six months pay minus "expenses" (their term), which would approximate to one month's pay for almost 20 years of employment with the San Francisco Newspaper Agency.

Please note that during this period of my employment history, all my Workers Comp injuries have been called into question or flat-out denied.

NEED TO GO BACK TO 1995 WHEN FIRST INJURED.

Exhibit A

4.    Do you have or are you perceived to have a disability?    __Yes__

If so, what is it?    ___Mental and Physical Disabilities___

Please describe how your disability limits one or more of your major life activities:

I am unable to sit. stand for long periods. Can't squat or bend and climb ladders. (See letter with list of preclusions)

_____

_____

5.    What type of discrimination are you claiming (check accordingly):

Race __xx__    National Origin _____    Religion _____    Color __xx__

Sex/Gender (including sexual harassment) __xx__    Age (over 40) __xx__

Retaliation __xx__    Disability __xxx__    Equal Pay _____

Other: __WRONGFUL TERMINATION_____

6.    State your job title and briefly describe your duties (or position applied for).

I AM A DRIVER/LOADER/UNLOADER.
(I have a Class A license and work on the docks for the newspaper agency).

                              Guild - Nov.18,1988
                              Union- Oct.23,1989          Present (?)
7.    Dates of employment or application _____ to _____.

8.    What is the employment event that caused you to contact the EEOC? (Hirign, layoff, promotion, accommodation, discipline, harassment, sexual harassment, etc.) List the alleged events of discrimination including the start and end dates. (Example: I was discharged on March 3, 1999.)

                    Please see letter (exhibit A)

(c) 2006 Bobum Corp.  No copyright claimed to U.S. Government works.

On May 11, 2006, a mandatory settlement conference was held at the Workers Compensation Appeals Board in San Francisco, CA between the defendants and myself.

This was after waiting nearly two and a half years from what was stated as an ADA sanctioned inquiry to weigh the benefits of an ergonomic study that was supposed to have been conducted but never was, to set-up any necessary accommodations for my return to work as a QIW(qualified Injured Worker), with a disability rating of 25% or greater (Please see exhibit A).

The Defendant's counsel, Mr. James Wesolowski stated that he had no recollection of any ergonomic study being mentioned or to be conducted in regards to my returning to work at the January , 2004 meeting, which is untrue (please see exhibit B).

At the same May 11, 2006 meeting, it was again reiterated that the company strictly enforces a policy of not accommodating modified employment duties for employees with disabilities,whether or not they have suffered their handicap due to an industrial or work-related injury. In my case, additional reasons given for my not being allowed to go back to work, namely:

1) An expired restraining order that never precluded me from employment but only imposed a certain distance that had to be maintained.
2) A work stoppage that was enforced by their misstating,misrepresenting and disguising the function of a TFN that was imposed by them (TFN or Til Further Notice is a work-related term wherein a worker is put on schedule to fill a shift either indefinitely or until the regular bid-shift employee returns from lay-off, vacation or disability) .

**Why would a disabled employee who has been off for 5 years be requesting permission to further lay-off and disrupt his life an additional year on TFN when the whole purpose of the January , 2004 meeting was to craft a return to work strategy?**

It was also at this time that my resignation or effective termination was demanded in return for the equivalent of six months pay minus "expenses"(their term), which would approximate to one month's pay for almost 20 years of employment with the San Francisco Newspaper Agency.

Please note that during this period of my employment history, all my Workers Comp injuries have been called into question or flat-out denied.

NEED TO GO BACK TO 1995 WHEN FIRST INJURED.

Exhibit A

9.      Please write a paragraph about your employment situation.  Tell us what happened and why you feel the incident is discriminatory.  Be thorough, this information is very important for the investigation.  You may attach additional sheets as needed.

Please see attached letter.

(c) 2006 Bobum Corp.  No copyright claimed to U.S. Government works.

10.    What was the employer's stated reason for taking this action?

Please see attached.

11.    What is the name and title of the employer representative that made the decision in your case that brought about this event?  (Identify this person's race, skin color, sex, and/or approximate age, as applicable.)

Claims Management, Inc.- their insurance company
Inga  Madden -Human Resources Manager

12.    Provide any other information (medical documentation, witness statements, witness names and/or addresses) that you have available.  Be sure and clarify what information witnesses can attest to.       Please see attached letter.

13.    Provide a list of names of persons who were treated better than you.  Provide their (1) name, (2) race, age, color, national orifin, sex and disability status (as applicable), and (3) job titles.

Rich Dooleywho came back with one leg and was still driving and working the dock.

14.    Provide a list of persons who were treated the same as you.  Provide their (1) name, (2) race, age, color, national orifin, sex and disability status (as applicable), and (3) job titles.

I am not aware of anybody else.

15.    Have you filed a charge in this matter with another agency?  If yes, please provide the name, address, and phone numbers of the agency.

Yes. NLRB,EEOC.

16.    Have you filed charges against this employer either inside the company or to an outside agency in this matter or in the past?  If yes, explain the situation, when it occurred and remedy afforded.

No.

(c) 2006 Bobum Corp.  No copyright claimed to U.S. Government works.

August 6, 2003

EEOC
Attn.: Deputy Director Javier Chacon
Via email:Javier.chacon@eeoc.gov

Dear Mr. Chacon:

I am writing you at the behest of Ms. Joan Erlich, who heads or is now currently assigned at the San Francisco EEOC office. At the time of our initial conversation back in May 1, 2003, she was the Director of the Houston Branch of the EEOC.

I am trying to clear up a dispute by clarifying the agency's correct definition of " UPON RECEIPT" in your Right-to- Sue letter. To quote Ms. Erlich from that earlier conversation " Upon receipt is when you get it in your hand". She also used the example that if it were lost in the mail for two weeks, the 90 days would begin when you received it,not the day it was mailed or sent.

It is my sincere hope that you can confirm or deny this as the EEOC's policy in practice .I would also greatly appreciate a timely response to this enquiry as this is of some urgency to me. My fax number is 707-643-4864; e- mail is loi@ammiromortgage.com

Sincerely,

Gregory Grant Chapman, Sr.

**eloisajohnson**

| | |
|---|---|
| **From:** | "Loi Bustamante" <Loi@AmmiroMortgage.com> |
| **To:** | "JAVIER CHACON" <JAVIER.CHACON@EEOC.GOV> |
| **Sent:** | Thursday, August 07, 2003 4:27 PM |
| **Subject:** | Re: policy enquiry |

—–- Original Message —–-
**From:** JAVIER CHACON
**To:** Loi@AmmiroMortgage.com
**Sent:** Thursday, August 07, 2003 10:53 AM
**Subject:** Re: policy enquiry

Dear Loi,
Ms Ehrlich is correct in defining the 90 day period. Your 90-day period for filing a lawsuit on a discrimination complaint under the statutes enforced by EEOC begins upon your receipt of the dismissal or right-to-sue notice. The day you received the notice begins your 90-day countdown. Please be aware that EEOC is unable to extend this period of time so hopefully this answers your inquiry. Please call on us if you have any other questions.

>>> "Loi Bustamante" <Loi@AmmiroMortgage.com> 08/07/03 12:40PM >>>
Dear Mr. Chacon:

Thank you for replying to my message. I am using my wife's email address as my provider is currently down.

I am writing at the behest of Ms. Joan Erlich, who heads or is now presently assigned to the San Francisco office. At the time of our initial conversation in May 1,2003, she was the Director of the Houston Branch of the EEOC.

I am trying to clear up a dispute by clarifying the agency's correct definition of "UPON RECEIPT" in your Right-to- Sue letter. To quote Ms. Erlich from that earlier conversation, " Upon receipt is when you get it in your hand". She also used the example that if it were lost in the mail for two weeks, the 90 days would begin when you received it, not the day it was mailed or sent.

It is my sincere hope that you can confirm or deny this as the EEOC's policy in practice. I would also greatly appreciate a timely response to this enquiry as this is turning out to be of utmost importance. You can reach me at  707-643-4864( fax)  or you can reply back to this  email address(loi@ammiromortgage.com).


Sincerely,


Gregory Grant Chapman, Sr.

counseling but attached you will find that the treating physician at the time qualified it as an industrial job related injury and I am currently being treated for severe depression. So in denying my claims, the only thing they have done is successfully impeded my recovery. Again, Dr. Sampson's primary objection to me having corrective surgery on my right foot because I am diabetic seem disingenuous at best since it has already been demonstrated that with the necessary precautions , the risk would be marginal and the surgery a successful one. I am convinced there are two negative factors that loom paramount in my treatment. One being the enmity that exists between Dr. Sampson and my treating physician ,Dr. Grotz.It is Dr. Sampson's disdain that has created a bias and undoubtedly affected the quality of my care and response to treatment. More than anything, it has been these decisions along with non-authorization that has halted my rehabilitation.

Secondly, I strongly believe there is a conflict of interest that exist when a self-insured company , such as the SFNA, is allowed to operate in a self-governing capacity that only serves its own best interest. For the sake of a global settlement, this same agency has made all my worker's compensation claims rateable and with merit but only at a wholesale level. It is this hypocrisy that has created a human blue book that offers the injured worker the worst possible form of dramatic human insult because it is deliberate.

I think it 's clear that Dr. Sampson's report raises reasonable doubt and only demonstrates that by further withholding treatment, there is no reasonable path to recovery and his diagnosis of permanent and stationary is largely based on the continuous denial of treatment and in fact undoes his declaration of permanent and stationary status because all remedies to return me back to work have not been exhausted.

**So my proposal is as follows:**

1.  **Be granted authorization to have surgery on my right foot and be allowed to explore the possibility of returning to modified or full duty.**
2.  **Be allowed to go to physical therapy on a 6-month program then return to modified /alternate duties.**
3.  **Develop an equitable severance package based on years of servitude to start a new vocation and ending a career.**

**I would appreciate your response within 10 days of your receipt of this letter .**

In retrospect, I feel that I have been placed on a shore staring out across tomorrow and the bridge I need to get there will be a bridge that I have been forced to burn.

Sincerely,

Gregory Grant Chapman, Sr.

17.    Please state what your performance was like (in other words, tell us whether you were performing below standard, at standard, or above standard) and how you can provide this is true (performance evaluations, awards, etc.)

My performance has always been  above standard most times. I would get awards and rewards for my being a good driver(see ex- hibit c).

(c) 2006 Bobum Corp.  No copyright claimed to U.S. Government works.

| EMPLOYEE I.D. | DEPARTMENT NAME/NUMBER/LOCATION | SAN FRANCISCO |
|---|---|---|
| 515562558 | Circ. Ex H.D. 520-142  SF | NEWSPAPER AGENCY |

**EMPLOYEE TRANSACTION**

## PERSONNEL ACTIONS

| | ENTER ACTIONS – UP TO 3 | EFFECTIVE DATE | 01 - INITIAL EMPLOYMENT | 05 - SEPARATION | 09 - JOB ASSIGNMENT CHANGE |
|---|---|---|---|---|---|
| A | 09 | 11 20 89 | 02 - LOA WITH PAY | 06 - PROMOTION/INCREASE | 10 - TRANSFER |
| | | | 03 - LOA WITHOUT PAY | 07 - JOB RECLASSIFY | 11 - OTHER DATA CHANGE |
| | | | 04 - RETURN FROM LOA | 08 - DEMOTION | 12 - DATA CORRECTION |

## EMPLOYEE NAME

| | EMPLOYEE'S NAME (LAST NAME, FIRST NAME, MIDDLE INITIAL) | SUFFIX | |
|---|---|---|---|
| B | Chapman, Gregory | | ☒ Mechanical<br>☐ Guild<br>☐ Exempt |

## STATUS INFORMATION

| | STATUS | STATUS DATE | EMPLOYMENT DATE | SEP. TYPE | LOA RETURN DATE | LOA TYPE | P/T | F/P | STATUS COMMENTS |
|---|---|---|---|---|---|---|---|---|---|
| C1 | | | | | | | | | |

| | EMPL TYPE | REVIEW TYPE | NEXT REVIEW DATE | BARGAIN UNIT | ADJUSTED HIRE DATE (G) | PRIORITY DATE (M) | ORIGINAL HIRE DATE |
|---|---|---|---|---|---|---|---|
| C2 | N | | | | | | |

| | DEPARTMENT NUMBER | COMPANY | SPECIAL STATUS | SPECIAL STATUS DATE |
|---|---|---|---|---|
| C3 | 0 0 | ☐ MCH<br>☐ OFC | | |

## JOB ASSIGNMENT INFORMATION

| | JOB # | BEGIN DATE | END DATE | POSITION # | JOB CLASS # | CLASSIFICATION DATE | JOB TITLE |
|---|---|---|---|---|---|---|---|
| D | 1 | 11 20 89 | 999999 | | 090009 | | New Drivers 70% |

| | PAY RATE | RT CODE | GRADE | STEP (G ONLY) | % FULL TIME | TERM | PAY CYCLE | TEMPORARY DEPT. # | TIME RPT |
|---|---|---|---|---|---|---|---|---|---|
| E | 94.53 | ☐ X<br>☐ S<br>☐ W | 02 | | 100.00 | | ☐ MCH<br>☐ OFC | 0 0 | |

| | CENTER CODE | EARNINGS TYPE | RATE AMOUNT | PERCENT | START DATE | STOP DATE |
|---|---|---|---|---|---|---|
| 1 | 6 1 1 0 | RSD | | | 11 20 89 | 99 99 99 |
| 2 | | | | | 99 99 99 |  |
| 3 | | | | | 99 99 99 |  |

## CONTACT INFORMATION

| | CURRENT ADDRESS: STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| F2 | | | | |

| | HOME TELEPHONE # (INCLUDE AREA CODE) | | EMERGENCY CONTACT NAME | CONTACT PHONE NUMBER (INCLUDE AREA CODE) | NIGHT PHONE CONTACT |
|---|---|---|---|---|---|
| F3 | | F4 | | | |

## PERSONAL INFORMATION

| | PAY | BANK TRANSIT # | BANK ACCOUNT # | SEX | DATE OF BIRTH | SOCIAL SECURITY # | ETH. | HNDCP | MIL | CITIZENSHIP |
|---|---|---|---|---|---|---|---|---|---|---|
| F5 | | | | | | | | | | VISA / CNTRY / EXP / VERIFY |

RETURN CONFIRMATION COPY TO: _____ Susan Govert

## COMMENTS

Change from trainee rate to  New Driver 70%

EXECUTIVE APPROVAL

| DEPT. MGR. | DATE | DIVISION HEAD | DATE | PERSONNEL MGR. | DATE |
|---|---|---|---|---|---|
| | 11/17/89 | | | | 11/30/89 |

Greg Chapman
1735  7th Avenue
San Francisco, Ca 94122
415-564-9427

**Job objective** is  to use my experience in shipping and inventory  along with my current knowledge of SFNA print transportation, as a Purchasing Clerk: Newsprint Traffic Specialist/ Class VI /Full Time /Regular

**San Francisco Newspaper Agency**: Foot Messenger, 3/89-present
- Transported newsprint materials, proofs, ad materials & parcels to and from each of the SFNA departments.
- Sorted and organized daily materials for distribution to each of the SFNA departments.
- Cross referenced and verified ad proofs by job numbers before transportation from Display to Claissfied Advertising.

**American Protective Agency:** Security  Officer, 4/87-9/88
- Prepared a written Daily Activity Report  to specify and describe safety hazards and property violations.
- Managed DAR files and building tenant records to verify facility security as well as to comply with building safety policies and procedures.
- Served as a guide to tenants and public for information and instructions in emergency procedures.
- Maintained inventory of safety equipment to insure the reorder of nescessary supplies for proper operation

**Lewis & Mayne, Inc**: Assistant Recieving Clerk, 2/85-4/87
- Assisted in shipping and recieving duties including inventory of warehouse to stocking of supplies.
- Reordered out stock inventory  claims for damaged materials; Packed and coded materials according to job numbers.
- Maintained inventory on IBM terminal with data entry and job vouching of packing lists.
- Supervised postal mailing supplies for metered UPS & USPS  and also monitored mail delivery services.
- Directed two receiving & shipping docks, coordinating activity with inventory control to meet daily operational production runs.

**Bosler/Brown Tempory Services**:Warehousing Stock Clerk, 9/84-2/85
- Stocked shelves,  set up merchandise displays, and maintained inventory files  at assigned companies.

**Kansas Ecology System**: Purchasing Agent, 10/84-2/85
- Brought reclaimed cotton fabrics to be recycled and distributed to industrial customers through bulk sales.
- Supervised processing of cotton materials for chemical treatment and bulk packaging.

**Education**
- Briarwood HS, East Point, Georgia  (HS Diploma)

January 15, 2003

Workers Compensation Board
P.O. Box 429003
San Francisco, CA 94142

Dear Sir/Madam:

On January 9,2003, I received a notice regarding my temporary disability benefits .It states that my payments had ended because Dr. Sampson, a QME physician, had determined my condition to be permanent and stationary. I also received a notice regarding Vocational Rehabilitation Allowance advising me of the start of aforementioned vocational rehabilitation allowance ( they enclosed a check for $308.). It also explained that attorney's fees were being withheld at a rate of $58./week , as requested by my attorney, Pazit Zohar.

I feel the change in my status is untimely and premature because the notice also stated that I had 90 days from receipt of the letter to make a determination if vocational rehabilitation services would benefit me. It also states that my employer had 30 days to identify a modified or alternative position within my work restrictions in which they were obligated to notify me. It continued by saying I had the right to choose a vocational rehabilitation counselor to assist me in developing a plan to return to work and that the time period for me to request these services would be limited to no later than April 6,2003 (a vocational rehab reply form was enclosed).

My main objection to accepting VRT vs. Continual Treatment that would someday enable me to return to my old job , is quite simple. Economically, the funds allocated for Vocational Rehab offers no promise towards a future for me and my family.This opinion is based chiefly on what I have to lose versus what I have to gain by divesting myself of almost 15 years of seniority,health and welfare, professional experience and credentials(commercial driver's license). These investments far outweigh the uncertatinty of returning in a scarce job market. In December 2002 alone , over 100,000 jobs were lost and even on the most basic level of job opportunity, minimum wage has had a scheduled pay increase reneged upon, and with no true indications of any economic recovery in sight, to me, these factors only make Vocational Rehab an elephant graveyard.

In regards to Dr. Sampson's 12-12-02 report,I would like to clear up some discrepancies he had stated: 1.) I was never employed by the SFNA as a warehouseman. I am a member of Local 921 , Teamsters Newspaper Drivers and Periodicals. 2.)His assertion that Dr. Grotz told me of the damage being done to my right foot in March 2002 because of favoring is incorrect. In fact , Dr. Grotz only confirmed a condition that had existed long before he treated me and what several other doctors concurred to be medical fact. The first acknowledgement of and treatment inclusive of my right foot began in 1995, shortly after my initial injury. It should also be noted that it was Dr. Sampson at the March 02 examination who asked me if I would like surgery performed on my right foot. It appears no his motive for asking was purely satirical. In addition, he also has several other facts and statements wrong. The second injury occurred on August 4,2000, not April, the posterior ligament reconstruction surgery by Dr. Cimino occurred in 1997, not February of 1992, a necessary treatment that was held up for almost 2 ½ years because of non-authorization by Claims Management. As to the December 13th re-injury, it is my best recollection that I stated that it occurred but that it did not occur at work. He goes on to try and dismiss my back claim and surmises that there is no reason for psychological