Gregory Grant Chapman Sr.
945 Danrose Dr Apt-H
American Canyon CA., 94503
Plaintiff (Pro Per)

**FILED**
JUN 23 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

## FOR NORTHERN DISTRICT OF CALIFORNIA

GREGORY GRANT CHAPMAN SR.,
Plaintiff,

Case No. C07-4775-SBA

NOTICE OF MOTION AND MOTION BY
PLAINTIFF FOR SUMMARY JUDGEMENT
MEMORANDUM OF POINTS AND
AUTHORITIES DECLARATION OF
PLAINTIFF GREGORY G. CHAPMAN Sr.
& RELIEF

THE CHRONICLE
Defendants,

Date: Vacated
Time: To be notified
Courtroom: 3, 3rd Floor
Trial Date: None set

### NOTICE OF MOTION AND MOTION

TO DEFENDENTS THE CHRONICLE:

NOTICE IS HEREBY GIVEN that as soon as the matter may be heard in Courtroom 3,3rd Floor,

Ste 400 of the Unites States District Court located at 1301 Clay St. Oakland CA., Plaintiff Gregory

Grant Chapman Sr., will and hereby does move for an Order Granting Summary Judgment in

favor of Plaintiff.  The motion is made on the grounds that there is no trialable issue of fact as to

liability, and   Therefore the moving party is entitled to judgment on the issue of liability as a

matter of law.  The motion will be based on the Notice, the attached Declaration of Plaintiff, and

the attached.

Memorandum of Points and Authorities.

Date:  6 · 23 · 08

_Gregory Grant Chapman Sr._
Gregory Grant Chapman Sr.
Attorney In Pro Per

United States District Court
For the Northern District of California

United States District Court
For the Southern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## FOR NORTHERN DISTRICT OF CALIFORNIA

GREGORY GRANT CHAPMAN SR.,

      Plaintiff,

THE CHRONICLE

         Defendant,

_____/

Case No. C07-4775-SBA

**JUDGMENT**

The Court having granted Plaintiff Gregory Grant Chapman Sr. motion for summary judgment by

Order dated _____2008, it is hereby ordered that Judgment be entered in favor of the Plaintiff

and against Defendant The Chronicle.

# IT IS SO ORDERED,

Dated:_____2008

_____
                      /s/
SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
For the Northern District of California

1

2  **INTRODUCTION**

3

4  In Defendants reply brief in support of its Motion to Dismiss the Defendant states that it

5  did not use fraudulent statements to the courts for the purpose of obstructing justice. They

6  claim the statement is false and defamatory and that it is a spurious allegation and one

7  that they do not take lightly. But the Plaintiff will prove without a doubt that the

8  Defendant did obstruct justice upon the courts and the Plaintiff and that to this day

9  Plaintiff is still suffering from devastating affects. Because of this Plaintiff is

10  unemployed, still being denied medical treatment, without pension and industrial injury

11  claim has yet to be settled. And after 8 years the Plaintiff remains in a medical legal

12  quagmire that has kept him from returning to work due to a destructive termination.

13  In the original case #C012305CRB filed 6/13/01 the Defendants alleged that the Plaintiffs

14  complaint was barred by the applicable statue of limitations because Plaintiff did not file

15  his complaint within 90 days of receiving his Right to Sue letter from EEOC. The

16  Defendant further contended that Plaintiff actions was barred because Plaintiff did not

17  file a charge with EEOC within 300 days of the unlawful conduct by defendant,

18

19

20

21

22

23

24

25

26

27

28

Case No. C07-04775 SBA

1

United States District Court
For the Northern District of California

**STATEMENT OF FACTS**

THE FACTS SURROUNDING THE DELIVERY OF THE RIGHT-TO-SUE

LETTER

This is a case which turned on the defendants fraudulent proof of one day of

mailing.  Defendant submits a one-year-old printout from a government web site

(Plaintiff's Exhibit 1) to prove that the statute of limitation was triggered on

March 14, 2001, by the delivery of a right-to-sue letter by the EEOC, a

prerequisite to Plaintiff's suit under title VII.

**Fact I**

Under the rules of law you can bring a Summary Judgment 20 days after the

complaint is filed. The Defendants waited to produce their fraudulent web page

and request their Summary Judgment in August 2002. Because the service which

they claim the Right to Sue letter was delivered did not exist prior to June 2002.

**Fact II**

In a 2002 deposition (Plaintiff exhibit 2 pg 173)in which I gave sworn testimony

(Exh 2,p 173  Line 17). (Mr.Hill) Q. and have you looked in the EEOC file

regarding the mail return receipt.(Exh 2,p 173 Line 19)(Mr.Chapman) A. I have.

Line 20 (Mr. Hill) Q. Are you aware that the file indicates the letter was

delivered to your Daly City address on March 14, 2001.(Exh 2, p173 Line 23-25

p174 line (Mr.Chapman) A. NO, I would contradict that because according to the

contact letter I believe it went to Susan Randall's desk on the 13th. And I believe it

might have been sent out on the 14th. There is no way it could have arrived at my house n the 14th if it was sent out on the 14th. (Line 4-5 p 174) (Mr. Hill)Q. what is your basis for thinking that letter was sent out on the 14th ? (Line 6)(Mr. Chapman) A. I believe that's what Mr. Ek's notes reflect. (Line 12-14 p 174) (Mr.Hill) Q. Do you have any documentation of any nature that would indicate that the letter was delivered to the Daly City address on March 17th? (Line15-18) (Mr Chapman) A. No, because I don't believe it was sent by registered mail, so I don't believe there is any documentation to prove that it wasn't received on the 17th.(Line 19-20 p 174) Q. And why do you say that it wasn't sent by registered mail? (Line21)(Mr.Chapman) Can you offer proof that it was? (Line 22) (Mr. Hill) Q. So you are really not certain one way or the other are you? (Line 24) (Mr. Chapman) I'm certain it was received on the 17th of March.

**FACT III**

(Plaintiff exhibit 3-5) April 19, 2001 requested file from EEOC, April 27,2001 EEOC in receipt of request for disclosure by Plaintiff. May 24,2001 copy of file being sent pursuant to Plaintiff's request and Commissions Procedures.

I originally requested my file approximately a full 5 months before Mr.Garofalo requested the file on August 13, 2001 (Plaintiff exhibit 6-8) Mr.Garofalo letter requesting file, August 22, 2001 request of disclosure of case file, August 24,2001 Mr.Garofalo's acknowledge of receipt of Equal Employment Opportunity Commission (EEOC) August 22,2001 letter. September 6, 2001 letter EEOC letter informing Mr. Garofalo they are sending the file.

I received my file approximately 4 months in May whereas the defendant received

**EXHIBIT 1**

16:26  1      Q.  Do you have any recollection of having such a

16:26  2  conversation with anyone at the EEOC prior to April 19

16:26  3  of 2001?

16:26  4      A.  I have no recollection at this time, no.

16:26  5      Q.  Do you know when Exhibit 9 was delivered to

16:26  6  your Larchmont Drive address in Daly City, Mr. Chapman?

16:26  7      A.  I'm assuming around March 17th or so.

16:27  8      Q.  Why do you assume March 17?

16:27  9      A.  Because the mail would normally take four to

16:27  10  five days.

16:27  11      Q.  Do you have any other basis for believing that

16:27  12  that letter was delivered to the Daly City address on

16:27  13  March 17th?

16:27  14      A.  That's the day I believe it was received.

16:27  15      Q.  When you say "received," what do you mean?

16:27  16      A.  The day it arrived at the 735 Larchmont.

16:27  17      Q.  And have you looked in the EEOC file regarding

16:27  18  the mail return receipt?

16:28  19      A.  I have.

16:28  20      Q.  Are you aware that the file indicates that the

16:28  21  letter was delivered to your Daly City address on March

16:28  22  14th, 2001?

16:28  23      A.  No, I would contradict that because according

16:28  24  to the contact letter I believe it went to Susan

16:28  25  Randall's desk on the 13th.  And I believe it might

173

**EXHIBIT 2**

16:28  1  have been sent out on the 14th.  There is no way it

16:28  2  could have arrived at my house on the 14th if it was

16:28  3  sent out on the 14th.

16:28  4      Q.  What is your basis for thinking that this

16:28  5  letter was sent out on the 14th?

16:28  6      A.  I believe that's what Mr. Ek's notes reflect.

16:28  7      Q.  Other than what you've told me, do you have

16:29  8  any other basis for concluding that letter was

16:29  9  delivered to your Daly City address on March 17th?

16:29  10      A.  I'm sure Loi could probably collaborate the

16:29  11  fact that it was received on the 17th.

16:29  12      Q.  Do you have any documentation of any nature

16:29  13  that would indicate that the letter was delivered to

16:29  14  the Daly City address on March 17th?

16:30  15      A.  No, because I don't believe it was sent by

16:30  16  registered mail, so I don't believe there is any

16:30  17  documentation to prove that it wasn't received on the

16:30  18  17th.

16:30  19      Q.  And why do you say that it wasn't sent by

16:30  20  registered mail?

16:30  21      A.  Can you offer proof that it was?

16:30  22      Q.  So you are really not certain one way or the

16:30  23  other; are you?

16:30  24      A.  I'm certain it was received on or after the

16:30  25  17th of March.

**EXHIBIT 3**

RECEIVED

APR 2 7 2001

EEOC-SFDO

April 19,2001

EEOC
901 Market Street #500
San Francisco CA 94103
Attn: Disclosure Dept.

Re: Gregory  G. Chapman vs. San Francisco Newspaper Agency
    Charge #370a10065

To Whom It May Concern:

I would like to request that  a copy of my file be  sent to  me at 1398 Hale Street,
Vallejo CA 94591 as soon as possible.

Sincerely,

Gregory Grant Chapman

**EXHIBIT 4**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Francisco District Office**

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

April 27, 2001

Mr. Gregory Grant Chapman
735 Larchmont Drive
Daly City, CA 94015

RE: Gregory Grant Chapman vs. San Francisco Newspaper Agency
        EEOC Charge Number 370-A1-0065

Dear Mr. Chapman:

I am in receipt of your request for Disclosure in the above referenced case file. Our regulations provide for the guarantee by any party who review the case files that the information disclosed will not be made public or used except in the normal course of a civil action or their proceeding instituted under the laws that we enforce.

Accordingly please return the completed attached Agreement of Nondisclosure form , a check or money order, made payable to the "U.S. Equal Employment Opportunity Commission," in the amount of $28.80. This fee covers $0.15 per page for copying (292 pages); the first 100 pages of duplication are provide without charge. Do not fax the Agreement of Nondisclosure form, we need an original signature.

Upon receipt of Agreement of Nondisclosure form an the check we will mail you the copy of the file. If you have any questions, please call Rosario F. Reyes at (415) 356-5101.

Sincerely,

Michael Baldonado
Deputy Director

Enclosure

**EXHIBIT 5**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

May 24, 2001

Mr. Gregory Grant Chapman
1398 Hale Street
Vallejo, CA 94591

RE: Gregory Grant Chapman vs. San Francisco Newspaper Agency
     EEOC Charge Number 370-A1-0065

Dear Mr. Chapman:

We are sending a complete copy of the file pursuant to your request and Commission's procedures. The copies are true and correct copies of the documents in the EEOC's investigative file.

If you have any questions, please call me at (415) 356-5100.

Sincerely,

Michael Baldonado
Deputy District Director

**Enclosure**

**EXHIBIT 6**



**LITTLER MENDELSON** ®

A PROFESSIONAL CORPORATION

**RECEIVED**

**AUG 1 6 2001**

**EEOC-SFDO**

ARIZONA

CALIFORNIA

August 13, 2001

Sandro M. Garofalo
Direct: 415.677.3105
Direct Fax: 415.743.6647
sgarofalo@littler.com

COLORADO

DISTRICT OF
COLUMBIA

*VIA U.S. MAIL AND FACSIMILE*

U.S. Equal Employment Opportunity Commission
San Francisco District Office
901 Market Street, Suite 500
San Francisco, CA 94103

GEORGIA

ILLINOIS

Re:    EEOC Charge No. 370A10065
       *Gregory Chapman v. San Francisco Newspaper Agency*

Dear Sir or Madam:

Please be advised that Mr. Chapman has filed a lawsuit against San Francisco Newspaper Agency in the U. S. District Court for the Northern District of California, Case No. C-01 2305 JL ADR. As we represent the Defendant in this case, I request that the Commission provide me with a copy of the file concerning Mr. Chapman's complaint of employment discrimination filed with the EEOC. As required, I am enclosing EEOC Form 167, the Agreement of Nondisclosure, as well as the cover page of the Complaint filed by Mr. Chapman in the District Court.

Of course, if there are any costs associated with photocopying Mr. Chapman's file, we will be happy to pay such costs.

Please contact me at your earliest convenience regarding my obtaining a copy of the file.

Very truly yours,

Sandro Garofalo

SMG/lp
Enclosures
SFRDOCS:30388604.1 002137.1103

MARYLAND

MINNESOTA

NEVADA

NEW JERSEY

NEW YORK

OHIO

TEXAS

WASHINGTON

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM ℠

650 California Street, 20th Floor, San Francisco, California 94108.2693 Tel: 415.433.1940 Fax: 415.399.8490 www.littler.com

**EXHIBIT 7**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Francisco District Office**                    901 Market Street, Suite 500
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

August 22, 2001

Mr. Sandro Garofalo
Littler Mendelson
650 California Street
20th Floor
San Francisco, CA 94108-2693

RE: Gregory Chapman vs. San Francisco Newspaper Agency
    EEOC Charge Number 370-A1-0065

Dear Mr. Garofalo:

I am in receipt of your request for Disclosure in the above referenced case file. Our regulations provide for the guarantee by any party who review the case file that the information disclosed will not be made public or used except in the normal course of a civil action or their proceeding instituted under the laws that we enforce.

Please sent a check or money order, made payable to the "U.S. Equal Employment Opportunity Commission," in the amount of $28.80 This fee covers $0.15 per page for copying (292 pages); the first 100 pages of duplication are provide without charge.

Upon receipt of the check we will mail you the copy of the file. If you have any questions, please call Rosario Reyes at (415) 356-5101.

Sincerely,

*Michael Baldonado*

Michael Baldonado
Deputy Director

Enclosure

**EXHIBIT 8**



**LITTLER MENDELSON**®
A PROFESSIONAL CORPORATION

ARIZONA

CALIFORNIA

COLORADO

August 24, 2001

Sandro M. Garofalo
Direct: 415.677.3105
Direct Fax: 415.743.6647
sgarofalo@littler.com

DISTRICT OF
COLUMBIA

Michael Baldonado
Deputy Directory
U.S. Equal Employment Opportunity Commission
San Francisco District Office
901 Market Street, Suite 500
San Francisco, CA 94103

GEORGIA

ILLINOIS

Re:     Gregory Chapman v. San Francisco Newspaper Agency
        EEOC Charge No. 370-A1-0065

MARYLAND

Dear Mr. Baldonado:

We are in receipt of your letter of August 22. Enclosed please find a check in the amount of
$28.80 as requested. This amount covers the photocopying charges.

MINNESOTA

Thank you for your prompt response to our request.

NEVADA

Very truly yours,

*Leticia Perez*

Leticia Perez
Secretary to Sandro Garofalo

NEW JERSEY

NEW YORK

/lp
Enclosures
SFRDOCS:30388604.2 002137.1103

OHIO

PENNSYLVANIA

TEXAS

WASHINGTON

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM ℠

650 California Street, 20th Floor, San Francisco, California 94108.2693 Tel: 415.433.1940 Fax: 415.399.8490 www.littler.com

**EXHIBIT 9**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

September 06, 2001

Mr. Sandro Garofalo
Littler Mendelson
650 California Street
20th Floor
San Francisco, CA 94108-2693

RE: Gregory Chapman vs. San Francisco Newspaper Agency
    EEOC Charge Number 370-A1-0065

Dear Mr. Garofalo:

We are sending a complete copy of the file pursuant to your request and Commission's procedures. The copies are true and correct copies of the documents in the EEOC's investigative file.

If you have any questions, please call me at (415) 356-5100.

Sincerely,

Michael Baldonado
Deputy District Director

**Enclosure**

**EXHIBIT 10**

November 12, 2002

EEOC
VIA FACSIMILE: 415- 356-5126
Re :CHAPMAN,Gregory
    #370a10065

DearSir/Madam:

I would like to request that my file be kept intact as there is still a litigation pending on my case.

I also would like another copy of my file.

I would greatly appreciate your cooperation in this matter. I may be reached at **707-643-4864** or address all correspondence to **1398 Hale St., Vallejo, CA 94591**.

Sincerely,

*Gregory B. Chapman sr*

Gregory Grant Chapman, Sr.

**EXHIBIT 11**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Francisco District Office**

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

November 18, 2002

Mr. Gregory Grant Chapman
1398 Hale Street
Vallejo, CA 94591

RE: Gregory Grant Chapman Sr. vs. San Francisco Newspaper Agency
    EEOC Charge Number 370-A1-0065

Dear Mr. Chapman:

I am in receipt of your request for Disclosure of the above referenced case file. Our regulations provide for the guarantee by any party who review the case files that the information disclosed will not be made public or used except in the normal course of a civil action or their proceeding instituted under the laws that we enforce.

Accordingly please return the completed attached Agreement of Nondisclosure form, please do not fax the Agreement of Nondisclosure form, we need an original signature, and a check or money or, made payable to the "U.S. Equal Employment Opportunity Commission," in the amount of $28.80. This fee covers $0.15 per page for copying (292 pages); the first 100 pages of duplication are provided without charge.

Upon receipt of the Agreement of Nondisclosure form and the check we will mail you the copy of the file. If you have any questions, please call Rosario Reyes at (415) 356-5101.

Sincerely,

Adria Shipley
Enforcement Supervisor

Enclosure (1)
**Nondisclosure Agreement**

**EXHIBIT 12**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Francisco District Office**

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

December 16, 2002

Mr. Gregory Grant Chapman
1398 Hale Street
Vallejo, CA 94591

RE: Gregory Grant Chapman vs. San Francisco Newspaper Agency
    EEOC Charge Number 370-A1-0065

Dear Mr. Chapman:

We are sending a complete copy of the file pursuant to your request and Commission's procedures. The copies are true and correct copies of the documents in the EEOC's investigative file.

If you have any questions, please call me at (415) 356-5100.

Sincerely,

*Adria Boetig*

Adria Boetig
Enforcement Supervisor

**Enclosure**

EXHIBIT A

Oct. 19,2002

This is to certify that the following statements are true and correct:

1.  A delivery confirmation receipt is available only through  Priority Mail for
    documents(1/4 " thick or less must be 3.5 " high,5 " long),and  Package Services.
    Until June 30, 2002,this service was not available through first class or standard
    delivery. Delivery confirmation only confirms that it was delivered  or attempted
    to be delivered  to the Post Office in the same  Zip Code of the addressee and can
    not confirm that it was received by the addressee.

2.  A Signature confirmation receipt is available  with Priority Mail only
    (document)and Standard Package Delivery. Signature confirmation  attests that
    the package or document was received and signed by addressee or recipient .A
    copy of the signature is available upon request via fax or mail.

3.  The guidelines as to how documents are sent (only through priority mail  and not
    standard first class, until June 30,2002) have been in place since these services
    have been introduced.

EXHIBIT B

USPS - Track & Confirm

 

Home | Sign In | Find ZIP Codes | Calculate Postage | Change Address | Locate Post Offi
Track/Confirm

Introduction
**Ship**
**Rates**
**Supplies**
**Web Tools**

▶  **Shipping Solutions** *Track & Confirm*



**Delivery Status**

›**Track & Confirm**
**Delivery Confirmation™**

›**Signature**
**Confirmation™**

You entered 03001290000801814887

Your item was delivered at 10:45 am on
March 14 in DALY CITY CA 94015.

**Track & Confirm**

Enter number from ship
receipt:

Keyword/Search

**POSTAL INSPECTORS**
Preserving the Trust

site map | contact us | FAQs | search | keywords
Copyright © 1999-2001 USPS. all rights reserved. Terms of Use Privacy Commi

9/7/2001

EXHIBIT C



# Track & Confirm

### Delivery Status

You entered 0300 1290 0008 0181 4887

There is no record of that item. If it was mailed recently, information may
not yet be available. Please try again later.

**Track & Confirm**

Enter number from shipping re

**Track & Confirm FAQs**



**POSTAL INSPECTORS**
Preserving the Trust

**site map  contact us  government services**
Copyright © 1999-2002 USPS. All Rights Reserved. Terms of Use  Privacy Policy

EXHIBIT D

# SIGNATURE CONFIRMATION™

# United States Postal Service®
# DELIVERY CONFIRMATION™



‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

2304 1070 0000 6786 2538

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

0306 2400 0001 2373 3374

☐ **WAIVER OF SIGNATURE**
If addressee or addressee's agent is not available to sign for delivery,
I authorize that the delivery employee's signature constitutes valid proof
of delivery if the item can be left in a secure location.

CUSTOMER SIGNATURE

---

**U.S. Postal Service™ Delivery Confirmation™ Receipt**

Postage and Delivery Confirmation fees must be paid before mailing.
Article Sent To: (to be completed by mailer)

DELIVERY CONFIRMATION NUMBER:

0306 2400 0001 2373 3374

(Please Print Clearly)

PS Form 152, May 2002

Postmark
Here

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access Internet web site at
www.usps.com®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel
(See Reverse)

---

**U.S. Postal Service™ Signature Confirmation™ Receipt**

SIGNATURE CONFIRMATION NUMBER:
2304 1070 0000 6786 2538

Postage and Signature Confirmation fees must be paid before mailing.
Article Sent To: (to be completed by mailer)

(Please Print Clearly)

Waiver of Signature   ☐ YES   ☐ NO

Postmark
Here

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access Internet web site at
www.usps.com®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel

EXHIBIT E

Direct Query - Intranet - "Quick Se..."



**UNITED STATES POSTAL SERVICE**

| Track/Confirm - Intranet Item Inquiry |
|---|
| Item Number: 0300 1290 0008 0181 4887 |

**Invalid Tracking Number or Tracking Number not found. Please check your entry and try again.**

Enter Request Type and Item Number:

Quick Search ⊙    Extensive Search ○

Explanation of Quick and Extensive Searches

Item Number:

Submit

**Inquire on multiple items.**

**Go to the Product Tracking System Home Page.**

This tracking # is not in our system. Therefore it must have been mailed improperly.

If you need more information or have question. You may call me @ (707) 558 - 1836.

Sherrye Turner.
Supr. Customer Services

http://pts.usps.gov/netdata-cgi/db2www/cbd_242.d2w/OUTPUT                    9/17/2003

EXHIBIT F



# U.S. Postal Service Delivery Confirmation Receipt

Postage and Delivery Confirmation fees must be paid be____ .lailing.

Article Sent To: (to be completed by mailer)

*(Please Print Clearly)*

DELIVERY CONFIRMATION NUMBER:

0300 1290 0006 0181 4887

Postmark
Here

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries: Access
Internet web site at www.usps.com
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)

☐ Priority Mail
☐ Standard Mail (B)

(See Reverse)

PS Form 152, March 1999

EXHIBIT G

# U.S. Postal Service Delivery Confirmation

## This Service

- provides confirmation of delivery/attempted delivery date upon inquiry
- Is available with Priority Mail and Standard Mail (B) (Parcel Post, Bound Printed Matter, Special Standard, Library) only

No insurance coverage is provided. If indemnity coverage is desired, consider insured mail, registered mail, or other special service that provides coverage. Contact your local postmaster for information concerning available options and limitations on coverage.

HOW TO USE:

1. COMPLETE FORM Type or print clearly

2. AFFIX POSTAGE or meter strip

3. ATTACH LABEL above or to left of delivery address

4. DEPOSIT at the nearest USPS collection box or at any post office for postmark and processing

PS Form 152, March 1999

102595-00-M-1247

---

## U.S. Postal Service Delivery Confirmation Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)

(Please Print Clearly)

Postmark Here

POSTAL CUSTOMER:
Keep this receipt. For inquiries: Access Internet web site at www.usps.com or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)

☐ Priority Mail
☐ Standard Mail (B)
(See Reverse)

PS Form 152, March 1999

DELIVERY CONFIRMATION NUMBER:

0300 1290 0000 0741 4587

---

## U.S. Postal Service Delivery Confirmation Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)

(Please Print Clearly)

Postmark Here

POSTAL CUSTOMER:
Keep this receipt. For inquiries: Access Internet web site at www.usps.com or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)

☑ Priority Mail
☐ Standard Mail (B)
(See Reverse)

PS Form 152, March 1999

DELIVERY CONFIRMATION NUMBER:

0300 1290 0000 1102 6749

EXHIBIT H

April 11,2003

EEOC
901 Market St. 5th Fl.
San Francisco ,CA 94103
Attn.: Human Resources Dept.

To Whom It May Concern:

Please assist me on educating myself on your policies and regulations pertaining to your past and present  mailing procedures ( outgoing mail),specifically , the Right-to-Sue letter.

It is my understanding that they are customarily sent out via regular ,standard first class mail, with normal delivery being 3-5 days and this has been your practice for some time now ( approximately more than 5 yrs.).

Your assistance in helping me verify this information would be greatly appreciated.

If possible, please also include any revisions or changes in any public record statements. *Your prompt response within 5 days of the date of this letter would be very helpful.*

Sincerely,

Gregory Grant Chapman, Sr.

EXHIBIT I

April 11,2003

EEOC
San Francisco District Office
901 Market St., 5th Fl.
San Francisco CA 94103
Attn.: Mr. Terry Knapp

Dear Mr. Knapp:

I would appreciate your assistance in clarifying what your office's procedures are in regards to the Right-to-Sue letter.

I would like to find out :

*A). How soon after as decision is rendered ,is the Right-to-Sue letter sent to the Claimant.*
*B)How is the letter sent? (regular mail,delivery confirmation, certified?)*
*C) How long have the above procedures been in place?*

**As this is a time-sensitive matter, I would appreciate a response within 10 days from the date of this letter.**

Sincerely,

Gregory Grant Chapman,Sr.

EXHIBIT J



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

April 15, 2003

Gregory Grant Chapman, Sr.
1398 Hale Street
Vallejo, CA 94591

    RE:    Gregory Chapman, Sr. v. S.F. Newspaper Agency
           EEOC Charge 370-A1-0065

Dear Mr. Chapman:

    I am in receipt of your letters dated April 11, 2003 and April 14, 2003, requesting information on the Commission's mailing procedures for Notices of Right to Sue. A review of your case file shows that you were mailed the Notice of Right to Sue in the above referenced case via certified mail on March 13, 2001 (Confirmation Number 03001290000801814887). Approximately two years ago, this office stopped mailing Notices of Right to Sue via certified mail. They are now sent via regular, first class mail. I am unable to provide you with a definitive response as to what constitutes a "normal delivery" time, since the Commission is not involved in the mail delivery process. Your inquiry would be more appropriately directed to the U.S. Postal Service.

    One of your letters requested information on how soon a Right to Sue letter is sent to the claimant once the Commission has made its determination. This office attempts to send these letters as expeditiously as possible.

    If you have further questions, please contact me at (415) 356-5074.

Sincerely,

*Adria Boetig*

Adria Boetig
Enforcement Supervisor

EXHIBIT K

April 22, 2003

EEOC
901 Market Street #500
San Francisco, CA 94103
Attn.: Ms. Adria Boetig

Dear Ms. Boetig:

Thank you very much for your prompt response to my letters. I truly appreciate the information you have provided.

Given that my Notice of Right-to-Sue letter was sent via Certified Mail, it would be very helpful of your office to provide me with a copy of the signature that would confirm its receipt.

I would also like to know a specific date two years ago when your office stopped mailing the Notice of Right-to-Sue letter via Certified Mail.

Once again, you have been truly helpful and I continue to appreciate your further assistance in this very important matter.

Sincerely,

Gregory Grant Chapman, Sr.

EXHIBIT L



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

May 6, 2003

Gregory Chapman, Sr.
1398 Hale Street
Vallejo, CA 94591

RE:     Gregory Chapman, Sr. v. S.F. Newspaper Agency
        EEOC Charge No. 370-A1-0065

Dear Mr. Chapman:

I am in receipt of your letter dated April 22, 2003, seeking additional information about the processing of the above referenced charge of discrimination. Please be advised that my April 15, 2003 letter erroneously stated that you were mailed the Notice of Right to Sue via certified mail. My letter should have stated that the Notice of Right to Sue was sent via Delivery Confirmation. I have enclosed the confirmation receipt.

You also requested the date when this office stopped mailing out Notices of Right to Sue via Certified Mail. This office stopped mailing out Notices of Right to Sue via Certified Mail in November 2000.

I hope this information is helpful to you.

Sincerely,

Adria Boetig
Adria Boetig
Enforcement Supervisor

Enclosure

EXHIBIT M

# CONTACT LOG

| Gregory Chapman: | Friday, 3:44 p.m. |
| --- | --- |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. |
| Operator: | EEOC. |
| Gregory Chapman: | Hi. Is it possible to speak to Rosario? |
| Operator: | She's away from her desk at the moment. Can I leave a message for her? |

Gregory Chapman:     Do you expect her back soon. Can I call back in maybe five or ten minutes or so?

Operator:            You can try calling back maybe in about five or ten minutes, yes.

Gregory Chapman:     Okay.

Operator:            Alright.

Gregory Chapman:     Alright, thank you.

Operator:            Bye bye.

Gregory Chapman:     Goodbye.

Gregory Chapman:     Friday, November 1st the year 2002, calling EEOC, San Francisco, CA.

Recording:           This is the EEOC in San Francisco. To reach an English-speaking operator press 0 at...

Operator:            EEOC.

Gregory Chapman:     Is Rosario back in?

Operator:            Now you missed her. She's gone for the day.

Gregory Chapman:     Oh, I see.

Operator:            Did you want to leave a message. She'll be in on Monday morning. She usually leaves at about four o'clock.

Gregory Chapman:     Does she?

Operator:            Um um.

Gregory Chapman:     Okay. Yea. I had some questions. You think someone else can answer them?

Operator:            What are your questions:

Gregory Chapman:     It was concerning the policy on mailing out the Right to Sue letter.

Page 20

| | |
|---|---|
| Operator: | Uh huh. |
| Gregory Chapman: | I was just talking to Rosario and it was my understanding that, she said they just basically mail it First Class. |
| Operator: | Right. |
| Gregory Chapman: | I guess and the other thing she said that, okay, that's been EEOC's policy for I guess five years now or whatever. |
| Operator: | Right, that we just send it out. Were you looking for a Notice of Right to Sue or was one mailed to you or what? |
| Gregory Chapman: | No, one was mailed but I was just trying to get a feel or see what the process was of mailing them. I guess the other question I had was, so you all don't send anything Delivery Confirmation then? |
| Operator: | No. We used to do that but we don't do that anymore. |
| Gregory Chapman: | Do you know how long ago you all used to do it? About five years ago or what? |
| Operator: | It was probably I would say maybe about five years or four years ago that we used to send it Certified Return Receipt Requested but we don't do that anymore. |
| Gregory Chapman: | But no Delivery Confirmation, right? |
| Operator: | No. |
| Gregory Chapman: | Okay. And then the other question would be, when you send out stuff you fill it out to the recipient, the person it's going to, right? It wouldn't just be left blank, would it? |
| Operator: | Do you mean as far as...Well, what happens is, the clerk in the unit is the one who sends the Notice of Right to Sue out, the unit clerk. |
| Gregory Chapman: | But I'm just assuming, if he's sending it out Certified or something he would fill it out. He wouldn't just leave it blank, right? |
| Operator: | If it's Certified he would fill it out, yes. |

| | |
|---|---|
| Gregory Chapman: | Okay. Alright, well that was pretty much the questions I had. What was your name? |
| Operator: | My name is Darlene. |
| Gregory Chapman: | Thank you Darlene. |
| Operator: | Okay. |
| Gregory Chapman: | Have a nice weekend. |
| Operator: | Alright, you too. |
| Gregory Chapman: | Thank you. |
| Operator: | Bye bye. |
| Gregory Chapman: | Goodbye. |
| Gregory Chapman: | Testing one, two, three. Today is November 6th the year 2002. The time is 1:40 p.m. |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. |
| Operator: | Good afternoon, how may I help you? |
| Loi Chapman: | Yes, Rosario? |
| Rosario: | Yes. |
| Loi Chapman: | Hi, my name is Loi Chapman. I don't know if you remember me but we were there last Friday. I had the baby with me so I wasn't able to really talk to you but do you mind clarifying something for me. |
| Rosario: | Sure. |
| Loi Chapman: | Okay. In regards to my husband's file. I just wanted to make sure that the Right to Sue letters are being sent out First Class and not Priority Mail, correct? |
| Rosario: | Yes. |

Loi Chapman:      And you said that began when?

Rosario:          I don't know exactly when that began but if you want to talk to the clerk or that unit I can transfer your call to that person.

Loi Chapman:      No. Maybe I will do that later.

Rosario:          You're that lady who was trying to find out when the Right to Sue was sent, right?

Loi Chapman:      Yea, that's what we're trying to accomplish. So we wanted to find out that it was not sent Priority because that is not the normal practice. Is that correct?

Rosario:          We just send it regular mail.

Loi Chapman:      Okay. And you said that you found it strange that, what do you call that, the Confirmation Receipt was not filled out

Rosario:          Well, actually if you send regular mail it's not gonna be filled out, that green card, that green paper.

Loi Chapman:      Yea, okay. I understand. You know, if he wanted to request that his file be kept do we need to do it in writing?

Rosario:          Yes.

Loi Chapman:      Who do I need to write to?

Rosario:          To Deborah Randall. She's the Enforcement Manager.

Loi Chapman:      Okay, Deborah Randall. And the same address?

Rosario:          Enforcement Manager.

Loi Chapman:      You said Enforcement Manager?

Rosario:          Um um.

Loi Chapman:      The same address, right?

Rosario:          Yes, same address.

Page 23

Loi Chapman:    Okay. How long....I'm looking at his case log and in the conversation log they said it was going to be sent to the supervisor for review before they send out the EEOC letter, Right to Sue letter. How long does the supervisor review that? Does it take a day? Does it take...

Rosario:    No idea because if you see the log you will see, I believer it was given to the supervisor the same day they were mailed, right?

Loi Chapman:    Yea.

Rosario:    Yea, so I don't know how long it takes to review it.

Loi Chapman:    Okay, well...

Rosario:    You probably need to talk to Deborah Randall because she's the person that reviews the cases.

Loi Chapman:    Okay, what is the name of the unit, the clerk unit, the unit of the clerk that sent this out?

Rosario:    From that Enforcement Unit?

Loi Chapman:    Yes.

Rosario:    Terry Knapp.

Loi Chapman:    Terry Knapp?

Rosario:    Uh huh.

Loi Chapman:    Is that a girl or a boy?

Rosario:    KNAPP.

Loi Chapman:    Is that girl or a boy?

Rosario:    It's a boy.

Loi Chapman:    What extension is he at?

Rosario:    5031.

Page 24

| | |
|---|---|
| Loi Chapman: | 5031. Okay, I'll give him a call. I just need to clarify something. Thank you Rosario. |
| Rosario: | Your welcome. |
| Loi Chapman: | Bye bye. |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. If you would like general information in English press 1. (End of Tape a, Side 2) |

\*Begin Tape 2, Side A...

| | |
|---|---|
| Gregory Chapman: | Testing one, two, three. |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. If you would like general information in English press 1. |
| Operator: | (Inaudible). May I help you? |
| Loi Chapman: | Hi. Rosario, can you transfer me to Terry please? |
| Rosario: | Sure, hold on. |
| Loi Chapman: | Thank you. |
| Recording: | Hello, this is Terry Knapp of EEOC in San Francisco. I am not at my desk right at the moment. If you'd like to leave me a message I will get back with you as soon as possible. Thank you. |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. |
| Operator: | EEOC. |
| Loi Chapman: | Yes, do you know if Terry Knapp is at lunch? |
| Operator: | I have no idea. I know that he is in the office today but I don't know if he's at lunch. |
| Loi Chapman: | Okay, thank you. |

| Operator: | (Inaudible). |
|---|---|
| Loi Chapman: | Alright, can you please transfer me to his extension please. |
| Operator: | Sure, hold on. |
| Loi Chapman: | Thank you. |
| Terry Knapp: | Good afternoon, EEOC, Terry speaking. May I help you? |
| Loi Chapman: | Hi Terry, my name is Loi Chapman. How are you? |
| Terry Knapp: | Pretty good mam. |
| Loi Chapman: | I have a question for you if you don't mind please. |
| Terry Knapp: | Um um. |
| Loi Chapman: | On your Right to Sue letters, how do you send them? |
| Terry Knapp: | How do we send them? |
| Loi Chapman: | Yea. |
| Terry Knapp: | You mean what system do we use? |
| Loi Chapman: | Yea. |
| Terry Knapp: | We send them out through regular mail. |
| Loi Chapman: | Regular mail? |
| Terry Knapp: | Um um. |
| Loi Chapman: | And how long has this procedure been in place? |
| Terry Knapp: | Oh, quite a number of years now. |
| Loi Chapman: | Thank you so much Terry. |
| Terry Knapp: | Okay mam. |
| Loe Chapman: | Bye bye. |

| | |
|---|---|
| Terry Knapp: | Bye bye. |
| Recording: | Hello, you have reached the EE... |
| Recording: | The person at extension 5... |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. If you would like general information in English press 1. |
| Recording: | The person at extension 5101 is not available to take your call. Please leave a message after the tone. |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. If you would like general information in English press 1. |
| Recording: | The person at extension... |
| Recording: | Hello, you have reached the EEOC... |
| Recording: | The person at extension 510... |
| Recording: | Hello, you have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at... |
| Recording: | Hello, you have reached the E... |
| Recording: | The person at extension 5101 is not available to take your call. Please leave a message after the tone. |
| Recording: | Hello, you have reached the EEOC... |
| Recording: | The person at extension 5101 is not available to take your call. Please leave a message after the tone or press 0 for assistance. |
| Recording: | A valid (inaudilbe word) number has not been specified. |
| Recording: | A valid... |
| Recording: | Hello, you have reached the EEOC in San... |

Page 27

| | |
|---|---|
| Terry Knapp: | Good afternoon, EEOC, Terry speaking. May I help you? |
| Loi Chapman: | Hi, Deborah Randall please? |
| Terry Knapp: | Hold on please mam, I'll transfer you to her line. |
| Loi Chapman: | Thank you. |
| Recording: | You have reached the office of Deborah Randall. I'm not available at the moment but I.... |
| Recording: | Hello, you have reached the EEOC.... |
| Terry Knapp: | Good afternoon, EEOC, Terry speaking. May I help you? |
| Loi Chapman: | Hi Terry, I was trying to get a hold of Ms. Deborah Randall but I keep getting her voicemail. Is she in the office by any chance? |
| Terry Knapp: | She may be away from her desk right now. She is in today. |
| Loi Chapman: | Do you know if it's her lunch time or something maybe? |
| Terry Knapp: | No, I think she is probably in a meeting right now. Would you like me to take your name and have her give you a call mam? |
| Loi Chapman: | No, I'd rather...I'm in and out of my office too. I was just wondering what is the best time to give her a call? |
| Terry Knapp: | I don't know exactly what her status is so far as when she'll be back in at her desk right now. |
| Loi Chapman: | Okay, I'll give her a....You close at four thirty, correct? |
| Terry Knapp: | We close at four thirty. |
| Loi Chapman: | I'll give her another call before then. Thank you. |
| Terry Knapp: | Yea, if you could. She should be back in by then. |
| Loi Chapman: | Thank you so much. Bye bye. |
| Terry Knapp: | Okay mam. |

Page 28

| | |
|---|---|
| Recording: | You have reached the EEOC in San Francisco. To reach an English-speaking operator press 0 at any time. |
| Operator: | EEOC, Diana (inaudible last name). How can I help you? |
| Loi Chapman: | Yes, hi. Is Ms. Deborah Randall in please? |
| Operator: | I don't know if she is or not but I can try. Let me get your name and number and I'll transfer you to her. |
| Loi Chapman: | My name is Loi Chapman. |
| Operator: | I'm sorry, what was it? |
| Loi Chapman: | Loi Chapman. |
| Operator: | Can you spell that for me? |
| Loi Chapman: | Yes, LOI CHAPMAN. |
| Operator: | Is that it? |
| Loi Chapman: | Yea. |
| Operator: | LOI CHAP? |
| Loi Chapman: | ...MAN. |
| Opertor: | Oh, MAN. Okay, I'm transferring you now. |
| Loi Chapman: | Thank you. |
| Operator: | Her number is 456, 356-505? (inaudible digit) |
| Loi Chapman: | 50? I'm sorry, what? |
| Operator: | 5059. |
| Loi Chapman: | Thank you. |
| Operator: | Are you calling long distance? |
| Loi Chapman: | Yea, from Vallejo actually. |

| | |
|---|---|
| Operator: | What is the number you're calling from? |
| Loi Chapman: | 707 643-4864. |
| Operator: | Something is wrong with the phone. Are you on a phone that.... |
| Loi Chapman: | Yea, I'm on the cellphone because I'm driving right now. |
| Operator: | It keeps cutting in and out and it's garbled. |
| Loi Chapman: | Okay. |
| Operator: | Can you say again what you just said? |
| Loi Chapman: | 707 643... |
| Operator: | I'm sorry, what? |
| Loi Chapman: | 643... |
| Operator: | 643... |
| Loi Chapman: | ...4864. |
| Operator: | I'm sorry, I didn't get that. You know, it's really not working very well. What are the last numbers? |
| Loi Chapman: | You know what, let me try her direct number then. Thank you. |
| Operator: | Okay. |
| Unknown woman's voice: | Okay, thank you for holding. |
| Loi Chapman: | Yes, hi, Ms. Randall? |
| Unknown woman's voice: | Okay, let's see what's happened here. |

*End of Tape 2, Side A recording

Transcribed by Doreen Christensen/11-14-02

Page 30

EXHIBIT N

August 6, 2003


EEOC
Attn.: Deputy Director Javier Chacon
Via email:Javier.chacon@eeoc.gov


Dear Mr. Chacon:

I am writing you at the behest of Ms. Joan Erlich, who heads or is now currently assigned at the San Francisco EEOC office. At the time of our initial conversation back in May 1, 2003, she was the Director of the Houston Branch of the EEOC.

I am trying to clear up a dispute by clarifying the agency's correct definition of " UPON RECEIPT" in your Right-to- Sue letter. To quote Ms. Erlich from that earlier conversation " Upon receipt is when you get it in your hand". She also used the example that if it were lost in the mail for two weeks, the 90 days would begin when you received it,not the day it was mailed or sent.

It is my sincere hope that you can confirm or deny this as the EEOC's policy in practice .I would also greatly appreciate a timely response to this enquiry as this is of some urgency to me. My fax number is 707-643-4864; e- mail is loi@ammiromortgage.com


Sincerely,


Gregory Grant Chapman, Sr.

**EXHIBIT O**

## eloisajohnson

**From:**     "Loi Bustamante" <Loi@AmmiroMortgage.com>
**To:**        "JAVIER CHACON" <JAVIER.CHACON@EEOC.GOV>
**Sent:**      Thursday, August 07, 2003 4:27 PM
**Subject:**   Re: policy enquiry

—— Original Message ——
**From:** JAVIER CHACON
**To:** Loi@AmmiroMortgage.com
**Sent:** Thursday, August 07, 2003 10:53 AM
**Subject:** Re: policy enquiry

Dear Loi,
Ms Ehrlich is correct in defining the 90 day period.  Your 90-day period for filing a lawsuit on a discrimination complaint under the statutes enforced by EEOC begins upon your receipt of the dismissal or right-to-sue notice.  The day you received the notice begins your 90-day countdown.  Please be aware that EEOC is unable to extend this period of time so hopefully this answers your inquiry.  Please call on us if you have any other questions.

>>> "Loi Bustamante" <Loi@AmmiroMortgage.com> 08/07/03 12:40PM >>>
Dear Mr. Chacon:

Thank you for replying to my message. I am using my wife's email address as my provider is currently down.

I am writing at the behest of Ms. Joan Erlich, who heads or is now presently assigned to the San Francisco office. At the time of our initial conversation in May 1,2003, she was the Director of the Houston Branch of the EEOC.

I am trying to clear up a dispute by clarifying the agency's correct definition of "UPON RECEIPT" in your Right-to- Sue letter. To quote Ms. Erlich from that earlier conversation, " Upon receipt is when you get it in your hand". She also used the example that if it were lost in the mail for two weeks, the 90 days would begin when you received it, not the day it was mailed or sent.

It is my sincere hope that you can confirm or deny this as the EEOC's policy in practice. I would also greatly appreciate a timely response to this enquiry as this is turning out to be of utmost importance. You can reach me at  707-643-4864( fax)  or you can reply back to this  email address(loi@ammiromortgage.com).

Sincerely,

Gregory Grant Chapman, Sr.

**EXHIBIT P**

March 17,2004


The Honorable Judge Charles  R. Bryer
400 McAllister St. Courtroom #8
San Francisco CA 94127


Dear Hon. Judge Bryer:

I am writing with new information re case number C012305CR8

The case was dismissed on a summary judgement for  what the opposing
counsel cited as procedural error. The dispute was over the time line for the 90
day Right-to- Sue letter from  the EEOC. Although I would never undermine your
discretion, I do believe that the court has erred because the truth was
misrepresented mainly in discovery. The  web page document you based your
decision on was never presented to the plaintiff nor his attorney during discovery
but surfaced approximately a year  or so later, right before the request for
summary judgement. Furthermore, it has been revealed that said web page
document is  fraudulent as substantiated by the evidence I have gathered and
submitting to you.

It would be my hope that after reviewing these documents, you would reverse
your decision.I am just one man still seeking a date with justice.


Sincerely,

Gregory Grant Chapman, Sr.

**EXHIBIT Q**



## LITTLER MENDELSON®

April 4, 2002

Sandro Garofalo
Direct: 415.677.3105
Direct Fax: 415.743.6647
sgarofalo@littler.com

Pazit Zohar
3145 Geary Street
Suite 436
San Francisco, CA 94118

Re:   *Chapman v. San Francisco Newspaper Agency*
      U.S.D.C. for the Northern District of California, Case No. C 01 2305 CRB

Dear Ms. Zohar:

As you may know, the parties attended a case management conference last Friday before Judge Charles Breyer in the above-referenced case. Various issues were discussed, including the possibility of accomplishing a global settlement of Mr. Chapman's sexual harassment and worker's compensation claims. Judge Breyer set a further case management conference for April 26, 2002 at 8:30 a.m., and indicated that he would like you to attend the conference to ensure that any discussions regarding Mr. Chapman's worker's compensation claims are as productive as possible.

If you have any questions, or if there are any matters you wish to discuss prior to the case management conference, please call me.

Very truly yours,

Sandro Garofalo

SG

cc:   San Francisco Chronicle
SFRDOCS:30449538.1 002137.1103

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM ℠

650 California Street, 20th Floor, San Francisco, California 94108.2693  Tel: 415.433.1940  Fax: 415.399.8490  www.littler.com

**EXHIBIT R**

CRAIG K. MARTIN, ESQ., SBN 74750
Attorney at Law
21 Columbus Avenue, Suite 229
San Francisco, CA 94111
415/245-2300

**FILED**

AUG 2 3 2002

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorney For Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY CHAPMAN SR.,

        Plaintiff,

vs.

SAN FRANCISCO NEWSPAPER AGENCY

_____Defendant_____/

CASE NO.: C 01 02305 CRB

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

STATEMENT OF FACTS

A. THE FACTS SURROUNDING THE DELIVERY OF THE RIGHT-TO-SUE

LETTER

    This is a case which turns on the proof of one day of mailing. Defendant submits a

one-year-old printout from a government web site (Defendant's Motion for Summary

Judgment, Exhibit 3) to prove that the statute of limitations was triggered on March 14,

2000, by the delivery of a right-to-sue letter by the EEOC, a prerequisite to plaintiff's

suit under Title VII. Defendant has moved for summary judgment, based on the

foregoing evidence. Defendant has not submitted any proof of delivery other than the

printout.

Craig K. Martin
Attorney at Law
44 Market St., 828
San Francisco 94102
415/245-2300

-1-

It should also be noted, however, that defendant does cite statements in the complaint and in plaintiff's deposition that the right-to-sue letter was received "on or about March 13, 2001," (the date the letter indicates that it was signed), as tending to support the conclusion that the letter was received on March 14, 2001 rather than two days later.

The web site (www.usps.com), which is operated by the United States Post Office, no longer carries any information on the relevant tracking number. (See Declaration of Craig K. Martin, and printout from www.usps.com as of August 22, 2001 attached as Exhibit A.) This tracking number is taken from the proof-of-mailing receipt in the EEOC file. (See Defendant's Motion for Summary Judgment, Exhibit 2.) The proof-of-mailing receipt in the EEOC file does not itself contain any information on when it was delivered, and there is no certified mail return card or any similar signed delivery receipt in the EEOC file. (See Declaration of Craig K. Martin.)

The web site, www.usps.com, currently displays only a response of "record not found" when the relevant tracking number is entered. (See Declaration of Craig K. Martin, and Exhibit A.) Thus, there is no way of independently verifying the information on the printout at the present time.

Defendant has requested this court to admit the printout as evidence under Federal Rules of Evidence, Rule 201(b)(2). Plaintiff contends that this printout does not meet the standard of this rule, since the information is no longer readily ascertainable from a reliable source. There is no way of knowing whether this printout is due to computer error of some kind. Furthermore, a delivery of one day

'raig K. Martin
ttorney at Law
1 Columbus Ave., 229
'an Francisco 94111
'15/245-2300

after an official letter is signed and ready to mail is unusually fast, both as to mail delivery and as to office mailing procedures.

Plaintiff contends that instead, the controlling rule in this case is that federal courts presume that mail service takes three days from mailing where there is no proof to settle the question of date of receipt of a right-to-sue letter from the EEOC in a Title VII case.  Application of this rule in this case would provide a date of three days from March 13, 2001, the date the letter was signed, and would provide a date of delivery of March 16, 2001, making plaintiff's June 13, 2001 complaint timely.

B.  THE FACTS SURROUNDING THE CLAIM FROM WHICH THIS COMPLAINT AROSE.

Plaintiff filed his EEOC charge on October 26, 2000.  (Plaintiff's deposition, excerpts attached to Defendant's Motion for Summary Judgment as Exhibit 1, p. 44, henceforth "Depo." page 166.)  The charge alleged sexual harassment.  (Defendant's Exhibit 1, pp. 54-56, Deposition Exhibit 6)

The original events leading to the charge began in October and November of 1999.  (Def. Exh. 1, p. 6, Depo, page 77, lines 22-25.)  Another co-worker, Tony Saab, who was openly gay, began making advances to plaintiff.  He stroked plaintiff's hair on a few occasions.  (Def. Exh. 1, p. 7, Depo., page 79, lines 8-24.)  Then this course of conduct progressed to where Saab would state to plaintiff that he wanted to perform a sexual act upon plaintiff, specifically "put his fist up [plaintiff's] ass to the elbow."  (Def. Exh. 1, p. 8, Depo., page 81, lines 20-25.)  At other times Saab would name other individuals who Saab said wanted to do this, and then Saab would add, "then I'm next." (Def. Exh. 1, p. 8- 9,  Depo., page 81, lines 20-25, page 82, lines 1-

Craig K. Martin
Attorney at Law
1 Columbus Ave., 229
San Francisco 94111
(15/245-2300

-3-

25.)  These remarks were made approximately ten or more times during the period of October and November, 1999. (Def. Exh. 1, p. 8-9, Depo, page 81, lines 20-25, page 82, lines 1-25.)  Saab also said, when he learned that plaintiff had an infant son, "Who would let you stick your dick in them?" (Def. Exh. 1, p. 11, Depo., page 90, lines 18-25.)

During this period of October and November of 1999, Saab also made negative remarks about plaintiff in regard to nonsexual subjects.  He would make statements that plaintiff was 20 minutes late, when plaintiff was not late.  (Def. Exh. 1, p. 12, Depo., page 95, lines 1-7.)  Plaintiff finally responded by confronting Saab over one of his statements that he was late when he was on time, and a shoving match ensued.  This ended with Saab running after plaintiff, grabbing him from behind, while sexually excited.  (Def. Exh. 1, p. 12, Depo., page 95, lines 18-24.)

Exasperated beyond endurance by these events, plaintiff spoke to his union representatives.  The union officials told him to contact the human resources department, which plaintiff did.  (Def. Exh. 1, p. 10, Depo., page 87, lines 1-5.)  The reports to the union representatives occurred in November, 1999 (Def. Exh. 1, p. 6, Depo., page 77, lines 22-25) and the report to the human resources department occurred on December 1, 1999.  (Def. Exh. 1, p. 16, Depo., page 111.)

Plaintiff knew that there was some horseplay and wrestling, and verbal teasing, that was common on the dock.  At first he thought nothing of any horseplay or off-color humor with Saab.  (Def. Exh. 1, p. 14-15, 24, Depo., pages 100-101, page 124, lines 15-19.)

However, as Saab's conduct progressively became more sexual, plaintiff

became upset and offended, and thought that it had crossed a line. (Def. Exh. 1, p. 14-15, Depo., pages 100-101.)

The verbal propositions by Saab ceased after plaintiff made his report and complaint to management. (Def. Exh. 1, p. 16-17, 18, Depo., page 111, lines 21-25, page 112, lines 1-8, page 115.) However, plaintiff now found himself confronted with repeated rumors and teasing from various co-workers to the effect that he was gay and was having an affair with Saab. (Def. Exh. 1, p. 16, 22-30, Depo., page 111, lines 14-20, page 120, lines 8-25, page 123, lines 9-11, see pages 123-134 (describing co-workers' statements).)

The co-workers sometimes attributed the source of these rumors to Saab, such as by saying "Tony said this." (Def. Exh. 1, p. 16, Depo., page 111, lines 14-20.) At other times, the innuendo seemed to be a twisted version of events of the previous harassment, also indicating to plaintiff that Saab was initiating the rumors. (Def. Exh. 1, p. 22, Depo., page 120, lines 8-25.)

In addition, Saab would glare at plaintiff in an intimidating manner (Def. Exh. 1, p. 17, Depo., page 112, lines 1-8) and would elaborately walk around plaintiff when his work duties took him near plaintiff. (Def. Exh. 1, p. 19-20, Depo., pages 117-118.) All of this, the gossip of an affair and the posturing by the harassing co-worker, continued until plaintiff left work because of an accidental injury to his foot, for which he receives worker's compensation. (Def. Exh. 1, p. 19, p. 2, Depo., page 117, see also page 33 (account of injury).)

Plaintiff complained to management again after the gossip and the posturing persisted for months, and another meeting was held in February, 2000. At this

'raig K. Martin
ttorney at Law
1 Columbus Ave., 229
an Francisco 94111
15/245-2300

meeting, one of the management representatives made a comment about what plaintiff was wearing, tight pants. (Def. Exh. 1, p. 33, Depo., page 140, lines 7-14.) Management suggested that plaintiff and Saab attend "conflict resolution," which plaintiff found offensive as putting him in the wrong and suggesting a relationship "like marriage counseling." (Def. Exh. 1, p. 33, 37,Depo., page 140, page 146, lines 14-23.)

Defendant maintains that plaintiff's EEOC charge was untimely because the propositions stopped after the December 1, 1999 complaint to management and the EEOC charge, alleging sexual harassment, was filed on October 26, 2000, more than 300 days after December 1, 1999. Plaintiff contends that the events occurring after December, 1999 were sufficiently severe or pervasive to create a hostile workplace in view of the immediately preceding and closely related unwelcome sexual advances, and that these events meet the standard for a continuing violation.

ARGUMENT

I. THE PROOF OF DELIVERY OF THE RIGHT-TO-SUE LETTER DOES NOT MEET THE STANDARD FOR ADMISSIBILITY UNDER FEDERAL RULES OF EVIDENCE, RULE 201(b)(2).

Rule 201(b)(2) provides that the court may take judicial notice of facts that are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.

Defendant argues that the printout attached as Exhibit 3 meets this standard, because it is a copy of what exists on a government web site and thus can be accurately and readily determined by resort to this source, whose accuracy cannot

Craig K. Martin
Attorney at Law
21 Columbus Ave., 229
San Francisco 94111
415/245-2300

reasonably be questioned. However, when plaintiff's counsel accessed this web site, the tracking number set forth in Exhibit 2, the proof-of-mailing receipt contained in the EEOC file, could no longer be tracked. Instead, the web site responded that it could find no record of this number. (See Declaration of Craig K. Martin, and Exhibit A (printout of August 22, 2002 from this web site).) The information is no longer readily ascertainable from a reliable source.

Computer error is a subject of jokes and sometimes of serious investigations, as in the Y2K threat or the failure to spot identity theft. Software does malfunction. Data is sometimes entered incorrectly. The printout from last year may reflect a mistake, and cannot any longer be checked on the current site. The right-to-sue letter was signed on March 13, 2001, and delivery on March 14, 2001 presumes both faster than usual mail service and a quick office turnaround to deposit the letter for mailing.

Cases dealing with web sites have discussed judicial notice of printouts from past web sites with some skepticism. In *Pollstar v. Gigmania, Ltd.* (E.D. Cal. 2000) 170 F.Supp.2d 974 the court was asked to take judicial notice of a printout of the license agreement notice from the web site at a time before the complaint was filed. The court did agree to take judicial notice of the license agreement printout in that case, because neither party disputed the authenticity of the printout. *Pollstar v. Gigmania, Ltd., supra*, 170 F. Supp. 974, 978. However, the court stated that it was doing so only for the limited purpose of evaluating the online license agreement . *Id.* at 978, fn. 2. The court noted that since the content of the web site was updated periodically, the printout could not represent the content of the web site at all times. *Id.* at 978, fn. 2. Because of the agreement as to authenticity, the court held that it

Craig K. Martin
Attorney at Law
1 Columbus Ave., 229
San Francisco 94111
415/245-2300

-7-

need not consider whether a printout of a web site as it then existed is "generally

known" and "capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned" under Federal Rules of Evidence, Rule

201(b)(2). *Pollstar v. Gigmania, Ltd., supra*, 170 F.Supp. 974, 978.

   In this case, the accuracy of the printout to demonstrate the fact it purports to

prove is in dispute. The information is no longer contained at the original source. It

is not verified by a government custodian of records, but is a copy of a record made

from a changeable announcement of records to the public. The printout does not

meet the standards of judicial notice under Federal Rules of Evidence, Rule

201(b)(2).

   II. WHEN THE DATE OF DELIVERY OF A RIGHT-TO-SUE LETTER

IS UNKNOWN OR DISPUTED, THE PRESUMPTION OF THREE DAYS FROM

MAILING TO DELIVERY IS APPLIED IN TITLE VII CASES.

   When the receipt date for an EEOC right-to-sue letter is unknown or

disputed, federal courts have invoked the presumption of time for service by mail,

three days from the date of mailing, as set forth in Federal Rule of Civil Procedure

6(e). *Lozano v. Ashcroft* (10th Cir. 2001) 258 F.3d 1160, 1164, citing *Baldwin

County Welfare Ctr. v. Braun* (1984) 466 U.S. 147, 149 n. 1, 104 S.Ct. 1723, 80

L.Ed.2d 196. In this case, the receipt date of the EEOC right-to-sue letter is

disputed. There is no evidence entitled to a heavy weight, such as the return postcard

for registered or certified mail that the court found determinative in *Rice v. New

England College* (1st Cir. 1982) 676 F.2d 9, 10. Instead, there is only a printout of a

computer record that is no longer available.

Craig K. Martin
Attorney at Law
1 Columbus Ave., 229
San Francisco 94111
415/245-2300

-8-

The evidence presented in this case is closer to that presented in *Lozano v. Ashcroft*, supra, 258 F.3d 1160, where a partially illegible copy of a "received" office stamp was found ineffective to rebut the presumption of three-day (or possibly five-day) time for delivery after mailing. *Lozano v. Ashcroft*, *supra*, 258 F.3d 1160, 1166. The *Lozano* court compared this evidence unfavorably to a certified mail receipt, which would show the actual date of receipt. *Id.* The *Lozano* court also refused to grant judicial notice under Federal Rules of Evidence, Rule 201(b)(2) for this copy, holding that this was not a document whose accuracy cannot be questioned. *Lozano v. Ashcroft*, *supra*, 258 F.3d 1160, 1165.

Plaintiff respectfully requests that this court deny judicial notice to the printout in Defendant's Exhibit 3, and determine the time of receipt by the three-day presumption of time between mailing and delivery invoked in cases where the date of delivery is unknown or disputed. *Lozano v. Ashcroft*, *supra*, 258 F.3d 1160, 1164, *Baldwin County Welfare Ctr. v. Braun* (1984) 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196. Using this standard, plaintiff's June 13, 2001 complaint is timely by two days.

III.  THE FACTS OF THIS CASE DEMONSTRATE A HOSTILE WORK ENVIRONMENT WHICH CONTINUED THROUGHOUT THE 300 DAYS IMMEDIATELY PRECEDING THE FILING OF THE EEOC CHARGE.

Defendant argues that the gossip that plaintiff and the harassing co-employee were having an affair, and the intimidating glares and dramatized physical avoidance gestures, cannot be said to constitute a hostile work environment. Defendant also points out that discrimination on the basis of sexual orientation or perceived sexual

Craig K. Martin
Attorney at Law
1 Columbus Ave., 229
San Francisco 94111
415/245-2300

—9—

orientation is not a violation of Title VII, and that in order to make out a case of

same-sex sexual harassment it is necessary to prove that the alleged harasser was

homosexual and the harassment was motivated by sexual desire. *Oncale v.*

*Sundowner Offshore Servs., Inc.* (1998) 523 U.S. 75, 80-81 (also finding a violation

of Title VII if circumstances of gender hostility not present here exist).

However, this is a case that began under the circumstances recognized in

*Oncale v. Sundowner Offshore Servs., Inc., supra*, 523 U.S. 75, that of harassment

motivated by sexual desire. When frustrated in this intent and angered by a report to

management, the harasser then manufactured a rumor that an affair indeed existed

and resorted to intimidating and upsetting glares and elaborate avoidance gestures to

increase the discomfort of the person who had frustrated and angered him. If this

were a case of a woman pursued by a man in this fashion, the courts would have no

problem finding that sexual harassment existed.

Defendant cites *Mims v. Carrier Corp.* (E.D. Tex. 2000) 88 F.Supp.2d 706 as

"factually indistinguishable" from the present case. In *Mims*, the plaintiff was teased

by coworkers as being gay, and the court found no violation of Title VII. However,

this point of resemblance cannot overshadow the distinction as to the determining

point in this case. In *Mims*, there was no prior harassment motivated by sexual

desire. In this case, there is.

It is established that the type of conduct in this case which occurred within

300 days of the October 26, 2001 charge, threatening stares, and causing other

employees to rumor monger, as retaliation for reporting previous touching and

propositioning behavior, is actionable under Title VII as harassment creating a hostile

work environment if it is sufficiently related to prior sexual harassment. *Henderson v. Whirlpool Corp.* (N.D. Okla. 1998) 17 F.Supp.2d 1238, 1243; see also *New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 1001-1002, 112 Cal.Rptr.2d 347 (case decided under California law, holding in reliance on Title VII cases that barrage of deliberately orchestrated intimidating glares in retaliation for complaint about previous unwelcome propositions could constitute harassment if it was sufficiently related to the prior harassment). In this case, the retaliatory behavior commenced immediately after the report, as it did in the cases cited above, and is sufficiently related to the previous harassment.

In order to prove a continuing violation, in which events occurring outside the limitations period may be considered as a basis for the claim so long as the events are part of an ongoing unlawful employment practice, plaintiff must demonstrate that his claims are founded on a pattern or practice of employer conduct that continued into the relevant period of limitations. *Draper v. Coeur Rochester, Inc.* (9th Cir. 1998) 147 F.3d 1104, 1107 (finding such continuing violation in sexual harassment case where most of the incidents of propositions and workplace deprivations occurred before the 300-day period).

The actions in this case, taken after the December 1999 report of harassment and continuing until plaintiff's accident caused him to leave work in August 2000 were not simple teasing or isolated incidents. They were sufficiently related to the prior touching and propositions to constitute a continuing violation and a hostile work environment. Defendant attempts to avoid this conclusion by pointing out that the gossiping co-employees were not motivated by sexual desire and plaintiff agreed

that they did not act in hostility, and that Saab was motivated by anger and was no longer verbalizing direct propositions, but that is not the rule set forth in *Henderson v. Whirlpool Corp., supra*, 17 F.Supp.2d 1238.

The stirring up of gossip and threatening gestures and stares can form a continuing violation and a hostile work environment under Title VII, if it is undertaken as retaliation for a report of previous harassment motivated by sexual desire. The co-employees' motivations do not defeat this claim, because they acted as they did because they were manipulated by the harasser, who led them to believe what was not true. The fact that the retaliatory behavior may indicate that the harasser is now feeling anger rather than sexual desire has not prevented a finding of the creation of a hostile work environment in the cases cited above. When the original motivation for the harassing behavior is sexual desire, the questions of retaliation and continuing violation should be treated in the same manner for victims of opposite-sex and same-sex harassment.

### CONCLUSION

For the foregoing reasons, summary judgment should be denied.

Dated: August 23, 2002                    Respectfully submitted,

                                          Craig K. Martin
                                          Attorney for Plaintiff

DECLARATION OF CRAIG K. MARTIN

I, Craig K. Martin, hereby declare and state:

raig K. Martin
ttorney at Law
l Columbus Ave., 229
m Francisco 94111
15/245-2300

## CERTIFICATE OF SERVICE

1
2

3      I declare that I am a citizen of the United States, over the
age of 18 years, and not a party to the within entitled action.
4  My business address is 21 Columbus Avenue, Suite 229, San
Francisco, CA 94111.
5

6      On August 23, 2002, I served a copy of the foregoing
documents described as:

7  OPPOSITION TO SUMMARY JUDGMENT

8  on all interested parties in said cause, by delivering a true
copy as follows:

9

10 X   (By Mail) I placed a true copy thereof enclosed in a sealed
envelope with postage thereon fully prepaid and deposited said
11 envelope in the United States Mail in the City and County of San
Francisco, California.

12

13 ___ (By Hand) I placed a true copy thereof enclosed in a sealed
envelope and caused such envelope to be delivered to the offices
of the addressee.

14

15 ____ (By Airborne Express) I sent a true copy thereof enclosed in
a sealed envelope to be delivered to Airborne Express for
overnight courier service to the office(s) of the addressee(s).

16

17 ____ (By Facsimile) I sent a true copy thereof via telephone
facsimile transmission to the following number(s) and a hard copy
to follow by mail.

18

19 Each envelope (if applicable) was addressed as follows:

20 RICHARD N. HILL, ESQ.
LITTLER MENDELSON
21 650 California Street, 20th Floor
San Francisco, CA 94108

22      I declare under penalty of perjury that the foregoing is

23 true and correct and that this declaration was executed on

24 August 23, 2002, at San Francisco, California.

25
26                                    _____
                                     H. Holland

